MONTGOMERY COUNTY DEVELOPMENT
CO. v. MILLER–VIDOR LUM-
BER CO.

(Court of Civil Appeals of Texas.  Galveston.
June 17, 1911.  Rehearing Denied
Oct. 5, 1911.)

1. PUBLIC LANDS (§ 173*)—SALE OR CON-
VEYANCE OF STANDING TIMBER—PAYMENT
OF PRICE AND LIEN THEREFOR.
Standing timber on a school land survey was transferred by bill of sale without express limitation as to the time within which it should be cut and removed from the land, the purchaser's rights of building roads and mills to continue until February, 1909, without additional cost, with an option of continuance until February 12, 1916, by the payment annually in advance of a certain sum per acre for so much as should be required for the exercise of such rights and privileges, the county retaining a vendor's lien against all rights and privileges until the purchase notes and all interest thereon were paid. Held, that the sum or rental to be paid after February 12, 1909, was not a payment in consideration of the timber cut after that time, but a payment as a condition for the continued exercise of the purchaser's rights and privileges under separate paragraphs of the deed, and that the purchaser's failure to pay the rental necessary to preserve its right to the use of the lands would not forfeit its title to all of the uncut timber on the land, and hence that a temporary injunction would not issue.
[Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 173.*]

2. PUBLIC LANDS (§ 173*) — TIMBER — CON-
VEYANCE AS PERSONALTY.
A deed of a school land survey executed by a county, which bargains and conveys to the purchaser all the county's right, title, and interest in and to all of the timber then on the survey, with the right and privilege of building roads and mills for cutting and removing it without express limitation as to the time in which it should be removed, with a provision that the possession of the survey, subject to the purchaser's rights and privileges, should remain absolute in the county, manifests an intention to convey the timber as

personalty to be severed and removed from the land.
[Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 173.*]

3. LOGS AND LOGGING (§ 3*)—SALE OR CON-
VEYANCE—TIME FOR REMOVAL.
When standing timber is sold as personalty, and no time is fixed in the deed or bill of sale in which severance must be made, the law implies that a reasonable time was intended, and a forfeiture of the purchaser's right to cut and remove the timber can only be claimed by showing a lapse of such reasonable time.
[Ed. Note.—For other cases, see Logs and Logging, Cent. Dig. §§ 6–12; Dec. Dig. § 3.*]

4. INJUNCTION (§ 132*)—SCOPE OF REMEDY—
POSSESSION OF PROPERTY.
It is not the function of a preliminary injunction to transfer the possession of land from one person to another pending an adjudication of the title, except where the possession has been fraudulently or forcibly obtained by the defendant and the equities require that it be restored and the original status of the property preserved pending the litigation over the title.
[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 302; Dec. Dig. § 132.*]

Appeal from District Court, Montgomery County; L. B. Hightower, Judge.

Trespass to try title, with an application for a temporary injunction by the Montgomery County Development Company against the Miller-Vidor Lumber Company. From an order denying an injunction, plaintiff appeals. Affirmed.

Nugent & McMahon and Hill & Elkins, for appellant.  Maco Stewart and J. Llewellyn, for appellee.

PLEASANTS, C. J.  This appeal is from an order of the district court of Montgomery county refusing a temporary injunction applied for by appellant in an action of trespass to try title brought by it in said court against the appellee to recover the title and possession of 13,284 acres of land in Montgomery county, known as the Walker county school land three-league survey. In addition to the statutory allegations in an action of trespass to try title, plaintiff's petition alleges: That defendant had wrongfully prevented plaintiff's agents and employés from cutting timber on said land and preparing same for cultivation, had informed prospective purchasers from plaintiff that they would not be permitted to take possession of the land, and had since June 17, 1910, the date of the alleged trespass, taken and converted timber from said land of the value of $15,000. "That on, to wit, about the 3d day of January, 1910, the said lands and premises were the property of the county of Walker in the state of Texas, and on said date the commissioners' court of said county, by an order duly passed and entered by said court, agreed to sell to G. A. Wynne of Walker county, Tex., all the right, title, and interest of Walker county in and to

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

said land, the date of such sale to be January 3, 1910. That afterwards the said G. A. Wynne conveyed to plaintiff his contract of purchase with said Walker county, and said Walker county on, to wit, the 17th day of June, 1910, conveyed said land by deed of that date to plaintiff with covenants of general warranty, and the plaintiff thereby acquired all the right, title, and interest of Walker county in said land on and after the 3d day of January, 1910. That, beginning on the 12th day of February, 1910, and up to and including the 17th day of June, 1910, the defendant unlawfully cut and removed from said premises, to wit, about 5,000,000 feet of timber, of the reasonable value of $15,000. That by reason of the acts above complained of plaintiff has been damaged in the sum of $100,000, for which he sues and prays judgment. That plaintiff is advised and believes, and on its information and belief charges, that the said defendant is cutting or attempting to cut, and, unless restrained, will cut and continue to cut, the timber remaining on said land, and will forbid plaintiff's agents and servants from entering upon said land, removing the timber therefrom and clearing the same. That the value of the timber so remaining upon said land is of the estimated value of $50,000, and that defendant is not able to respond in damages to plaintiff for the damages already occasioned, as above alleged, and the additional damage that will be occasioned if it continues to cut and remove said timber, and that plaintiff has no adequate remedy at law against said defendant if it is permitted to continue to cut and remove said timber. Premises considered, plaintiff prays that the defendant be cited to answer this petition, and that upon a hearing hereof it have judgment against defendant for its damages as above alleged, the title and possession of said land, with a cancellation of any claim asserted by defendant to the same, and writ of possession and general relief, and that pending a final hearing of this cause that the defendant be restrained from entering upon said land and from cutting and removing any timber thereon or from in any way interfering with the plaintiff's agents and servants in cutting timber on said land and clearing the same, or from in any way interfering with plaintiff's possession, dominion, and ownership of said land and for all such other and further orders and decrees as may be necessary and proper in the premises."

Defendant answered by general and special exceptions and general denial, and by special plea averred that it was the owner of all the timber upon said land, and held the possession of the land for the purpose of removing and manufacturing said timber under and by virtue of an order of the commissioners' court of Walker county and a deed made in pursuance of said order by the county judge of said county on February 12, 1902, conveying said timber and possessory rights to R. McDonald, whose title and rights thereunder are now held by defendant. The order and deed referred to in this answer are as follows: "Wednesday, February 12th, 1902. On this day came on to be considered propositions of divers persons for the purchase of the county's three-league tract of school land lying in Montgomery county, Tex., the proposition of R. McDonald of Harris county, Tex., to pay the county $25,000 for said timber, being considered by the court (a full court being present) to be the best bid, and, the same being considered by a unanimous vote of the court to be a fair market price for said timber, the same was accepted by a unanimous vote of the court, whereupon the said R. McDonald paid to the county treasurer the sum of $5,000, and executed two promissory notes, the first for the sum of $7,500, due March 10, 1902, payable to Walker county, providing for 10 per cent. attorney's fees, etc., the second note for $12,500, due February 12, 1903, providing, however, that the same may be matured sooner on conditions therein expressed; that said R. McDonald also executed a deed of trust and chattel mortgage to secure the payment of said notes. Whereupon the county judge, under the order of the commissioners' court, executed the following bill of sale to said timber, viz.: 'The State of Texas, County of Walker. Know all men by these presents that I, John C. Williams, county judge of Walker county, Texas, acting herein under and by virtue of and in compliance with an order of the honorable commissioners' court of Walker county, Texas, this day made and duly entered upon the minutes of said court, for and in consideration of the sum of twenty-five thousand dollars, paid and secured to be paid to the said treasurer of said Walker county, Texas, by R. McDonald, as follows, to wit, the sum of five thousand dollars in cash; one vendor's lien note for the sum of seventy-five hundred dollars, due and payable to the treasurer of the county of Walker, state of Texas, on the 10th day of March, A. D. 1902, bearing even date herewith, and drawing interest, if not paid at maturity, from said maturity, at the rate of 6 per cent. per annum, and providing that failure to pay it at its said maturity shall, at the election of said commissioners' court of said Walker county, Texas, mature the hereinafter described note for the sum of twelve thousand five hundred dollars, this day given by said R. McDonald to said treasurer of said Walker county, Texas, in part payment for the hereinafter described timber, and further providing that, in the event default is made in its payment at maturity, and it is thereafter placed in the hands of an attorney for collection, or suit is brought on the same, an additional amount of 10 per cent. on the principal and interest of same shall be added to the same as attor-

ney's fees; and another vendor's lien note for the sum of twelve thousand five hundred dollars, due and payable to the treasurer of the county of Walker, state of Texas, on the 10th day of March, A. D. 1903, unless matured sooner upon the sixty days written notice by the county judge of said Walker county, as it is especially provided in said note, bearing even date herewith, and drawing interest from the 10th day of March, A. D. 1902, at the rate of 6 per cent. per annum, and providing that failure to pay, on March 10, 1902, the above-described note for the sum of seventy-five hundred dollars, this day given by said R. McDonald to said treasurer of said Walker county, Texas, shall, at the election of the commissioners' court of said Walker county, Texas, immediately mature it, and further providing that, in the event default is made in its payment at maturity, and it is thereafter placed in the hands of an attorney for collection, or suit is brought on the same, an additional amount of 10 per cent. on the principal and interest of same shall be added to the same as attorney's fees; have granted, bargained, sold, and conveyed, and by these presents do grant, bargain, sell, and convey unto the said R. McDonald, of Harris county, Texas, as follows, to wit: All of Walker county's right, title, and interest in and to all of the timber of every kind and character now on 13,284 acres of land, being the original Walker county three-league school land headright in Montgomery county, Texas, and being described by metes and bounds as follows, to wit: [Here follow field notes.] Also the right and privilege of building upon the above-described tract of land such saw and planing mills, tram roads, wagon roads, lumber yards, lumber sheds, houses, residences, and stock lots, as may be necessary for the most economical and advantageous operation of said plants, or moving of and marketing said timber; and the right and privilege of entering upon said above-described tract of land, and of using any water thereon, for the purpose of protecting, cutting, and removing and marketing said above described timber; it being especially understood and agreed that the rights and privileges as set forth in this paragraph shall continue in full force and effect until February 12, A. D. 1909, without additional cost to said R. McDonald; and may, at the option of said R. McDonald, his heirs or assigns, be continued until February 12, A. D. 1912, by his or their paying in advance, annually, to the said county of Walker, the sum of 6 cents per acre, for so much of said land as is required for the proper exercise of said rights and privileges; and may, at the option of the said R. McDonald, his heirs or assigns, be likewise continued until February 12, A. D. 1914, by his or their paying in advance, annually, to the said county of Walker, the sum of ten cents per acre for so much of said land as is required for the proper exercise of said rights and privileges; and may likewise, at the option of the said R. McDonald, his heirs or assigns, be continued until February 12, A. D. 1916, by his or their paying in advance, annually, to the said county of Walker, the sum of twenty-five cents per acre for so much of said land as is required for the proper exercise of said rights and privileges; but it is especially understood and agreed that the possession of said land, subject to the above and hereinafter mentioned rights and privileges, remains absolutely in said county of Walker. Also, if the said R. McDonald, his heirs or assigns, should establish upon the above-described tract of land, during the existence of this contract, and under the terms hereof, any railroads, and if at such time as he, his heirs or assigns, may have finished moving said timber from said land, he, his heirs or assigns, should desire, for any reason, to leave one railroad permanently upon said land, said railroad to run as nearly as is practicable in a direct line through said land, he, his heirs or assigns, hereby is granted right, privilege, and option of buying a one hundred foot right of way, to be fifty feet on each side from the center of such railroad, by paying to the said county of Walker, in cash, the sum of three dollars per acre for such land which may be included in such right of way, and the said county of Walker will make deed to cover upon receipt of such payment. To have and to hold the above-described right, title, and interest in said timber, together with the rights and privileges herein granted, unto the said R. McDonald, his heirs and assigns, until February 12, A. D. 1906, and I, the said John C. Williams, county judge of Walker county, Texas, do hereby bind myself, in my official capacity only, and my successors in office, to warrant and defend until said February 12, A. D. 1916, all and singular said right, title, and interest in said timber, and also the other rights and privileges herein granted, unto the said R. McDonald, his heirs and assigns, against every person whomsoever lawfully claiming or to claim the same, or any part thereof. But it is expressly agreed and stipulated that the vendor's lien is retained against the above-described right, title, and interest in and to said timber, and is also retained against all other rights and privileges herein granted until the above-described notes, and all interest thereon, are fully paid according to their face and tenor, effect, and reading, when this conveyance shall become absolute under above conditions, to said February 12, A. D. 1906. All changes and corrections herein were made before the execution hereof. Witness our hands and the seal of said Walker county, Texas, at Huntsville, Texas, this the 12th day of February, A. D. 1902. John C. Williams, County Judge of Walker county, Texas.' "

It is further averred in said answer: "That, long prior to the day on which plaintiff acquired any right, title, or interest in and to the premises described in its petition, this defendant offered and tendered to pay, and did pay, to the county of Walker all sums of money due the said Walker county under and by virtue of the terms of said contract and conveyance above quoted. And this defendant is now ready, able, and willing to pay any sums of money that may be due to said Walker county or its assigns under and by virtue of the terms of that portion of said conveyance above quoted. That this defendant is now engaged in cutting and removing from said land and premises its property the said timber aforesaid, as it has full and perfect right to do under its conveyance aforesaid. That it has been put to a great expense in erecting a plant and various other ways preparatory to removing its property from said land. That it is engaged in the manufacturing and sale of lumber which has been and is being taken from said land. That, if an injunction is granted in this cause, great and irreparable injury will be occasioned defendant, in that its business will be disturbed, and its costly and expensive plant, appliances, and means of manufacturing and sale of said lumber will become and be absolutely worthless, and its property of every kind and character will be rendered practically useless, and it will be occasioned great loss and damage. That on or before April 12, 1909, defendant paid to the county of Walker the sum of $776.88, which was accepted by said county of Walker, through its treasurer, W. H. Woodall, said payment having been made and accepted as a payment of rental for the rights and privileges hereinbefore stipulated. That on or about April 28, 1910, defendant, through its lawfully authorized agent, tendered to said Walker county an additional sum of $776.88, to be applied upon any rental that might be due or become due under the terms of said contract, and for rights and privileges hereinbefore mentioned, which tender was made to Judge W. A. Leigh, county judge of Walker county, W. H. Woodall, county treasurer of Walker county, and Gibbs National Bank (through G. A. Wynne, cashier), county depository of Walker county. That defendant since said April 28, 1910, has ever stood ready and now stands ready to pay said sums of money or any other sum that may be due under the terms of said contract, does now tender said amount, and stands ready to execute any reasonable or necessary bond or assurance for its continued faithful performance of its contract and from time to time to pay sums that may become due, if any, to said Walker county, or the plaintiff herein, or whoever has succeeded or does succeed to the rights of said Walker county, under their terms of said contract. Wherefore this defendant prays that the injunction prayed for by plaintiff be in all things denied and refused; that, should the court grant an injunction herein, it prays that the court require of plaintiff a good and solvent bond in an amount sufficient to assure it against loss in the event that on final hearing hereof, it be decided that such injunction was improvidently granted or issued."

By supplemental petition plaintiff denies that Walker county ever conveyed the timber on the premises in controversy to R. McDonald under the terms of the deed from John C. Williams, county judge, to R. McDonald, referred to in defendant's answer, and alleges that said deed was not the act and deed of Walker county, and that, if said deed was executed, it was so executed without the authority of said county or the commissioners' court thereof. "Plaintiff specially denies that said deed, if the same be held to be a valid deed by Walker county, conveyed the right to cut timber on said land until 1916, but said deed specially stipulated and provided that the right to cut timber on said land terminated on February 12, 1902, and should not thereafter exist unless the said R. McDonald or his assigns should pay to Walker county or assigns six cents per acre for all of said tract of land. That the defendant paid six cents per acre to Walker county for the year 1909, but failed to make any payment on or before February 12, 1910, and that no right accrued to the said R. McDonald, or to his assigns, or to the defendant, to cut any timber on said land after said February 12, 1910, and that the said defendant had no right, title, or interest in said timber, and no right to cut the same now, nor at any time subsequent to February 12, 1910."

By supplemental answer defendant excepted generally and specially to plaintiff's supplemental petition, and generally denied all of its allegations. It further specially pleaded that the order of the commissioners' court authorizing the conveyance to McDonald was regularly made and entered upon the minutes of said court and was in all respects a valid exercise of the power and jurisdiction of the court to dispose of said timber and was not subject to collateral attack. It further pleaded that the contract of sale to McDonald and the execution of the deed to him by the county judge was known, acquiesced in, and ratified by said commissioners' court, and the consideration therefor accepted and appropriated by said court to the use and benefit of Walker county. It further pleaded: "This defendant further pleads and shows to the court that it and those under whom it claims purchased from R. McDonald said timber standing and growing on said land described in plaintiff's petition, together with all the rights, titles, interest, and privileges acquired by the said R. McDonald from the said Walker county, and under and by virtue of the order and judgment aforesaid, and the deed and bill

of sale aforesaid, executed by John C. Williams as aforesaid, paying therefor an adequate and valuable consideration, and it and those under whom it claims had no knowledge or notice, either actual or constructive, of any vice, fraud, or defect such as is cited in plaintiff's supplemental petition, or of any other in said order or judgment of said court or the deed or bill of sale made thereunder. Wherefore this defendant prays that the preliminary injunction prayed for herein be not granted, and that on final hearing hereof it go hence without day and recover of plaintiff all costs and general and special relief."

It was shown on the hearing in the court below that the land in controversy was owned by Walker county on February 12, 1902. On that date the commissioners' court of said county sold the timber upon the land to R. McDonald upon the terms and conditions stated in the deed from John C. Williams, county judge, to R. McDonald before set out. The order of the commissioners' court making the sale was regularly made and entered in the minutes of the court and authorized the county judge to execute the deed conveying the timber and other rights in the land therein stated. McDonald paid the cash consideration expressed in said deed and executed the notes therein mentioned, which were all paid as they matured. The defendant has acquired and holds all title and rights of McDonald, and is in possession of the property, having a large sawmill and several tram roads thereon, and is actually engaged in cutting and manufacturing the timber on said land. This lumber plant has been in operation for several years. No payment or tender of the six cents per acre, as provided in the deed to McDonald, was made on February 12, 1909, but on April 12, 1909, the Peach River Lumber Company, the immediate predecessor in title of defendant, paid to the treasurer of Walker county the sum of $776.88; that being six cents per acre for all of the land described in said deed. This money went into the treasury of Walker county and was appropriated by the commissioners' court of said county to the use and benefit of the county, but it is not affirmatively shown that the commissioners' court was informed or knew that said money had been paid into the treasury of the county under the provisions of the McDonald deed. On January 3, 1910, the commissioners' court of Walker county contracted with G. A. Wynne, agent, to sell him all of the land in controversy for a consideration of $5 per acre, all of said consideration, except the sum of $60,000, to be paid in cash within 90 days, and said $60,000 to be paid in 12 annual installments of $5,000 each, with interest at 6 per cent. per annum, payable annually. The contract was made for the benefit of plaintiff, or it subsequently became the owner of all of

Wynne's rights thereunder, and on June 17, 1910, plaintiff having complied with all of the terms of the contract, the land was conveyed to it by order of said commissioners' court. The contract and the deed to plaintiff each recites that it is made "subject to the rights of the owners and purchasers of the timber on said land under contract or bill of sale of date the 12th day of February, 1902." No payment or tender of the six cents per acre was made by the defendant to Walker county on February 12, 1910, but on April 28, 1910, such tender was made by the defendant, and was refused by said county. Such being the state of the pleadings and evidence, the trial court held in effect that defendant's right, under the deed to McDonald, to cut and take timber from the land after the 12th day of February, 1909, was conditioned upon its payment to Walker county annually in advance up to the 12th day of February, 1912, a rental of six cents per acre for all of said land, but "that by accepting the payment of six cents per acre made to the county on April 12, 1909, the county waived its right to demand payment in advance of six cents per acre on February 12, 1910, and that the tender of said sum of six cents per acre on April 28, 1910, had the effect to continue defendant's right to cut said timber," and for this reason the application for temporary injunction was refused. We cannot agree with the trial court in its construction of the deed from Walker county to McDonald.

[1] The deed by its express terms conveys to McDonald all of the timber on said land for a consideration of $25,000, and contains no express limitation as to the time in which such timber shall be cut and removed from the land. The rental of six cents per acre required to be paid in advance after the 12th day of February, 1909, is not required to be paid as a consideration for the timber cut and taken after that time, but as a condition or consideration for the continuance after the time of the privilege of erecting, maintaining, and operating upon said land "such saw and planing mills, tram roads, wagon roads, lumber yards, lumber sheds, houses, residences, and stock lots as may be necessary for the most economical and advantageous operation of said plants in moving and marketing said timber, and the right and privilege of entering upon said above-described land and of using any water thereon for the purpose of protecting, cutting, and removing and marketing said above-described timber." The six cents per acre is not required to be paid for all of said land, but only for so much thereof as is necessary "for the proper exercise of said rights and privileges." The conveyance of the rights and privileges above enumerated is entirely separate and distinct from the conveyance of the title to the timber, and is made in a distinct and separate paragraph of the instru-

ment, and it is a strained construction of the language of the deed to hold that, by the failure of defendant to pay the six cents per acre necessary to preserve its right to the use of the land for the purpose above stated, it would forfeit its title to all of the uncut timber on said land.

[2] We do not agree with appellee's contention that the deed conveyed the timber as an interest in the land and in fee simple forever, like the conveyance under consideration by our Supreme Court in the case of Lodwick Lumber Co. v. Taylor, 100 Tex. 270, 98 S. W. 238. We think the intention of the parties, as gathered from the entire instrument, was to convey the timber as personalty, and it was clearly contemplated that appellee should sever and remove it from the land.

[3] No time being fixed in the deed in which this severance must be made, the law implies that a reasonable time was intended, and appellant could only claim a forfeiture of appellee's right to cut and remove the timber by alleging and proving that such reasonable time had elapsed.

The rights of the parties under a contract of this kind of the sale of growing timber are discussed in the cases of Lodwick Lumber Co. v. Taylor, 99 S. W. 192, and Beauchamp v. Williams, 115 S. W. 130, and many of the decisions upon the question are cited. The authorities cited in these cases sustain the proposition that when growing timber is sold as personalty, and no time is fixed for its removal, the purchaser must remove it within a reasonable time, or forfeit his right to the owner of the realty. What is a reasonable time depends, of course, upon the facts and circumstances of the particular case. Appellee not having forfeited its right to cut and remove the timber from the land by the failure to pay the six cents per acre rental for the use of the land for the purposes stated in the deed, it follows that a temporary injunction restraining it from cutting and removing the timber was properly refused.

[4] Appellee's right to cut and remove the timber not being shown to have been forfeited, appellant has no right to cut any of it, and appellee should not be restrained from preventing appellant from cutting it. In so far as the right of appellee to the possession of those portions of the land held and used by it for the purposes stated in said deed is concerned, the right to such possession cannot be determined upon an application for temporary injunction. In the case of Simms v. Reisner, 134 S. W. 278, this court said: "It is not the function of a preliminary injunction to transfer the possession of land from one person to another pending an adjudication of the title, except in cases in which the possession has been fraudulently or forcibly obtained by the defendant, and the equities are such as to require that the possession thus wrongfully invaded be restored, and the original status of the property preserved pending the decision of the issues of title." In a suit in which only the right of possession is involved, it is manifest that the whole purpose of the suit might be accomplished by a preliminary injunction ousting the defendant, and placing the plaintiff in possession. That it would be an abuse of the right to a preliminary injunction to use it in this way is well settled. Chaison Townsite Co. v. McFaddin, 121 S. W. 716; Railway Co. v. City of Galveston, 137 S. W. 724, recently decided by this court.

These conclusions render a discussion of the several assignments of error presented in appellant's brief unnecessary.

We think the order of the trial court refusing to grant the injunction should be affirmed, and it has been so ordered.

Affirmed.