MATAGORDA CANAL CO. v. MARKHAM IRR. CO.

(Court of Civil Appeals of Texas. Galveston. Feb. 26, 1913. Rehearing Denied March 20, 1913.)

1. APPEAL AND ERROR (§ 781*)—DISMISSAL—MOOT QUESTIONS.
When the subject-matter of the litigation has ceased to exist, an appeal may be dismissed.
[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3122; Dec. Dig. § 781.*]

2. EVIDENCE (§ 6*)—JUDICIAL NOTICE—MATURING OF CROPS.
The Court of Civil Appeals will take judicial notice of when a rice crop is matured and gathered in the state.
[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 5; Dec. Dig. § 6.*]

3. WATERS AND WATER COURSES (§ 49*)—IRRIGATION — INJUNCTION — DEFENSES — DAMAGE TO DEFENDANT.
Where, in a suit by one irrigation company to enjoin another company from using water from a river, it appears that the granting of the relief would have greatly injured the crops of defendant's water tenants, and the evidence does not clearly show that it would result in appreciably increasing plaintiff's water supply, or that its tenants needed a greater amount, a temporary injunction was properly denied.
[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 39, 40; Dec. Dig. § 49.*]

4. INJUNCTION (§ 137*)—DEFENSES—INJURY TO DEFENDANT.
If more damage is likely to result from granting a temporary injunction than by refusing it, it should not be granted; but any doubt as to whether greater injury will result in refusing than in granting it should be resolved in plaintiff's favor.
[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 307–309; Dec. Dig. § 137.*]

5. WATERS AND WATER COURSES (§ 49*)—IRRIGATION—ACTIONS TO ENFORCE RIGHTS—PARTIES.
In an action between irrigation companies to enjoin defendant from taking water from a river, defendant's water tenants, some of whom claimed riparian rights, were necessary parties; the general rule that one whose property is in-

jured by several trespassers may sue any one of them not being applicable.
[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 39, 40; Dec. Dig. § 49.*]

6. PARTIES (§ 32*)—PERSONS IN INTEREST.
Where others not parties to a proceeding have a direct interest in the subject-matter, and a final decree cannot be rendered without adversely affecting their interests, such persons are necessary parties.
[Ed. Note.—For other cases, see Parties, Dec. Dig. § 32.*]

7. PLEADING (§ 301*)—AFFIDAVIT TO PLEA—SUFFICIENCY.
An affidavit to a plea in abatement signed, "M. Irrigation Co., by J. M. M., Its President and Agent," was sufficient; the jurat of the clerk in the usual form, "Sworn to and subscribed before me this the 19th day of August, 1912," meaning that the plea was sworn to by M., the president.
[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 314, 318, 892–897, 904–906; Dec. Dig. § 301.*]

8. WATERS AND WATER COURSES (§ 49*)—NECESSARY PARTIES.
In a suit between irrigation companies to enjoin defendant from improperly taking water from a river, other irrigation plants who might also be improperly taking water are not necessary parties; it not being necessary to make them parties in order to adjust the equities between plaintiff and defendant.
[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 39, 40; Dec. Dig. § 49.*]

9. WATERS AND WATER COURSES (§ 49*)—IRRIGATION—WRONGFUL TAKING—ACTIONS TO ENJOIN—RIGHT OF ACTION.
If the water supply of plaintiff irrigation company was not sufficient because another irrigation company, other than defendant, was taking with plaintiff's consent more water than it was entitled to receive, defendant could not be held responsible for the shortage in plaintiff's water supply, and itself enjoined from taking water.
[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 39, 40; Dec. Dig. § 49.*]

10. WATERS AND WATER COURSES (§ 40*)—RIPARIAN RIGHTS.
Riparian rights are superior to any right of appropriation under the statute. Rev. St. 1895, art. 3117, providing that the flow should not be diverted to the prejudice of riparian owners unless they consent thereto, or their rights have been condemned, and article 3119, providing that as between appropriators the first in time is the first in right.
[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 32; Dec. Dig. § 40.*]

11. WATERS AND WATER COURSES (§ 39*)—RIPARIAN RIGHTS—"RIPARIAN."
All land abutting upon a running stream is "riparian" as to that part of the survey which lies within the watershed of the stream.
[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 31; Dec. Dig. § 39.*
For other definitions, see Words and Phrases, vol. 7, p. 6243; vol. 8, p. 7791.]

12. WATERS AND WATER COURSES (§ 44*)—RIPARIAN RIGHTS—RIGHTS OF RIPARIAN OWNERS.
The rights of riparian owners to use water of a street for irrigation are equal as between upper and lower owners; the water being pro-

portioned in accordance with the number of acres of riparian land owned by each.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 36; Dec. Dig. § 44.*]

13. WATERS AND WATER COURSES (§ 153*)—RIPARIAN RIGHTS — SEPARATION FROM LAND.

The common-law rule that the ownership of riparian rights is inseparable from the ownership of the land was abrogated by Rev. St. 1895, art. 3117, prohibiting the flow from being diverted to the prejudice of riparian owners unless they consent to the diversion, or their riparian rights are condemned; the statute recognizing the right of sale or condemnation of riparian rights.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 158–160; Dec. Dig. § 153.*]

Appeal from District Court, Matagorda County; Wells Thompson, Judge.

Action by the Matagorda Canal Company against the Markham Irrigation Company. From an order denying a temporary injunction, plaintiff appeals. Affirmed.

Gaines & Corbett, of Bay City, for appellant. Wilson, Dabney & King, of Houston, for appellee.

PLEASANTS, C. J. This appeal is from an order of the judge of the district court of Matagorda county, made in vacation, refusing a temporary injunction in a suit for injunction brought in said court by appellant against the appellee. Appellant is a corporation organized and chartered under the laws of this state for the purpose of maintaining and operating an irrigation canal and plant, and appellee is a corporation organized and chartered under said laws for a like purpose. Both of said corporations obtain their supply of water from the Colorado river and acquire the right to appropriate waters from said stream under the provisions of articles 3115 to 3122 of the Revised Statutes. The right of appropriation so acquired by appellant is prior in time to that held by appellee.

Plaintiff's petition, after alleging its prior right of appropriation of the waters of said stream, alleges that it had contracted to furnish water to a number of persons (naming them), holding and cultivating land contiguous to its canal, for the irrigation of the crops of such persons for the year 1912; that the defendant was unlawfully diverting the flow of the waters of the Colorado river and appropriating to its own use water, to which appellant had a prior and superior right, and if defendant was permitted to continue to appropriate said water the result would be the destruction of the crops of the water tenants of plaintiff, whose crops plaintiff had contracted to water, as before stated, and plaintiff would thereby become liable to said tenants for failure to furnish water according to its contract in damages amounting in the aggregate to the sum of $135,000, and the property and plant of plaintiff would be rendered valueless. It is further alleged that the defendant was not able to respond in damages for the amount of injury and damage that would be so caused plaintiff. The prayer of the petition is as follows: "Wherefore, premises considered, plaintiff prays that your honor will set this case down for hearing, and upon hearing hereof will grant a writ of injunction restraining the defendant from interfering with the flow of the Colorado river so as to interfere with this plaintiff in procuring water therefrom, and to permit sufficient water to pass its pumps to supply water for the proper irrigation of the lands which plaintiff has contracted to irrigate, and that upon final hearing this plaintiff be decreed to have a prior right over and above the defendant to the use of the water in the Colorado river for the purpose of irrigating the lands described in its declaration of appropriation and contracted to be irrigated from year to year, and that the injunction hereinbefore prayed for be made perpetual; for all costs of court in this behalf expended; and for all other and further relief, both general and special, either at law or in equity, to which plaintiff may of right be entitled, and, as in duty bound, plaintiff will ever pray." This petition, which was duly sworn to by the general manager of plaintiff company, was presented to the judge of the district court of Matagorda county on July 24, 1912. Whereupon notice was ordered issued to the defendant and a hearing of the application for temporary injunction set for August 19th.

The defendants on August 19, 1912, filed an answer which contains two pleas in abatement. In the first plea it is averred, in substance, that defendant has contracted to furnish water to irrigate the crops of 44 persons (naming them), who own and cultivate lands along the defendant's canal, and, if defendant is enjoined from pumping water from the Colorado river in accordance with its said contracts, the crops of the persons named would be destroyed. It is further averred that, in addition to rights said persons have acquired under their contracts with defendant, they have riparian rights in the water of the Colorado river superior to any right therein held by the plaintiff. Wherefore it is averred by defendant that the persons named who hold said contracts with defendant for water for the irrigation of their crops and the riparian rights aforesaid are necessary parties to this suit, and, not being parties herein, the injunction prayed for by plaintiff should not be granted. The second plea in abatement avers, in substance, that there is a defect of parties, in that the Lane City Pumping Plant and Borden Pumping Plant Company own and operate pumping plants on the Colorado river above the plants of plaintiff and defendant, and are taking a much larger

quantity of water from the river than is being taken by the defendant, and are not parties to this suit. It is further averred that the wrong to plaintiff, if any, is being done by the parties named, and that no decree that is just and equitable can be rendered herein unless said named parties are parties to this suit. The affidavit of each of these pleas is in the following form: The plea is signed, "Markham Irrigation Company, by J. M. Moore, Its President and Agent." Immediately beneath this signature is the following: "Sworn to and subscribed before me on this the 19th day of August, A. D. 1912. George Austin, Clerk District Court in and for Matagorda County, Texas." Defendant further answered by general and special exceptions to the petition, and set out in detail the facts relied on to show that plaintiff was not entitled to the relief asked. The facts so averred which are pertinent to the questions discussed in this opinion will be hereinafter stated. The hearing was had upon the petition and answer and the affidavits and oral testimony of witnesses.

The material facts shown by the evidence are as follows: The appellant on January 14, 1909, acquired by purchase all of the property, franchises, and rights of the Matagorda Rice & Irrigation Company, including the right of said company to the use of the waters of the Colorado river for irrigation purposes. The last-named company made an appropriation of the waters of said river for the purpose of irrigating 40,000 acres of land on December 1, 1900, by complying with the provisions of article 3120 of the Revised Statutes. Immediately after filing the statement required by the article before mentioned, said company began the construction of its canal and irrigation plant and completed the same within 90 days thereafter. For the first year or two of its operation said company irrigated from 600 to 1,200 acres of land, and it or its successor, the appellant herein, has some years irrigated as much as 6,000 acres. Appellant undertook to irrigate 2,700 acres for the year 1912, and the crop upon one-half of this had been completely watered and had matured at the time of the hearing in the court below. It is not shown that any of the lands watered by appellant are riparian, or that appellant or any of the persons whose lands it had contracted to water had any riparian rights in the Colorado river. The pumping plant of appellant is situated on an inlet which connects with the Colorado river. At the time this pumping station was located there was a raft in the river below the mouth of the inlet. This raft forms an obstruction to the flow of the river and causes an accumulation of water in the river above the raft. By the action of the flood waters of the river the lower side of the raft is broken up and carried off by the current, and additional logs and drift are added to the upper side; the result being that the raft is moved further up the river after each flood. It is now several miles above the mouth of the inlet from which appellant gets its supply of water, and appellant depends for its water supply upon the water that comes over or through the raft.

Appellee's predecessor in title, the Moore-Cortes Canal Company, was incorporated as an irrigation company on November 3, 1900, and made its formal appropriation of water rights in said river on March 1, 1901, by complying with the provisions of the statute before cited; the extent of its appropriation being for 30,000 acres of land. This company at once began the construction of its plant and has irrigated 12,000 acres of land each year since it began operations. The appellee, on February 25, 1912, purchased all of the property, franchises, and rights of the company last named, including its rights as appropriator, and also its riparian rights, and is operating said plant and irrigating, under contract, the lands of the 44 persons named in its plea of abatement; the aggregate number of acres so irrigated being 9,250.

The pumping plant and canal of the Moore-Cortes Canal Company is on the west side, which is the opposite side of the river from that of the appellant. This pumping plant is also on an inlet which runs into the Colorado river at a point a mile or two above the inlet which forms the intake of appellant's plant. The raft was below this intake of appellee's plant at the time appellee's pumping plant was located, but it is now a mile or more above it. There is a long, deep pool of water in the river above the raft, but in time of drought like that which occurred in 1912 the flow of water through the raft is not large. Anticipating that the flow through the raft might become insufficient to supply the water necessary to enable it to carry out its contracts for irrigation, appellee, before the pumping season of 1912 began, cut a canal from the river above the raft through which the water from the pool in the river before mentioned was carried into a lake north of its pumping plant, and from thence by another canal into the inlet on which its pumping plant is situated. In this way it had secured all the water necessary for carrying out its irrigating contracts. This diversion of water from the pool above the raft to the inlet on which appellee's pump is located was made with the knowledge and consent of appellant; but appellant contends, and the testimony sustains the contention, that when it consented to this diversion of the water it understood that the inlet running from appellee's pump into the river and through which appellee originally secured its water would not be dammed, and the water taken from the pool by appellee, and which was not taken up by appellee's pump, would have an unobstructed flow through said inlet back into the river,

and would thus become available for use by appellant. This flow of the water from appellee's pump back into the river has been partially obstructed by a small dam near the mouth of the inlet, and there is testimony to show that, if not wholly constructed by appellee, the formation of this dam by natural causes was assisted by appellee, and as a result thereof the water is held in the inlet and around appellee's pump.

As before stated, there was a scarcity of rain during the season of 1912, and the flow of water through the raft was very slight, and as a consequence appellant's supply of water was limited. Appellant had, however, secured some additional water by making connection with a public drainage ditch which was the outlet of a lake some distance above appellant's pumping plant, and it was not shown that the water it was obtaining was not sufficient to water all of the land it had contracted to water for the season of 1912. If an injunction had been granted, as appellant prayed, the crops of the rice farmers who obtained water from appellee would have been greatly damaged, if not totally destroyed.

The Lane City Pumping Plant and the Borden Pumping Plant, both of which were located several miles above the plants of appellant and appellee, were each pumping a larger quantity of water from the river than that taken by appellee. The right of appropriation of the Lane City Plant was prior to that of appellant and of appellee; but the water that was being taken by said plant at the time this injunction was asked was not being used by it to irrigate the lands it had contracted to irrigate or was obligated by its appropriation to irrigate, but was being pumped and conducted by it into the canal of the Gravity Canal Company, whose right of appropriation was junior to that of appellee. Neither said Gravity Canal Company nor any of its water tenants had any riparian rights in the water of the Colorado river. This taking of the water by the Lane City Plant and turning it into the canal of the Gravity Canal Company was with the knowledge and consent of appellant, and, as before stated, the quantity of water so taken from the river was in excess of that taken by appellee, and the evidence justifies the conclusion that but for this diversion of water by the Lane City Plant there would have been ample water for both appellant and appellee. There is also evidence to the effect that because of the low state of the river and the quantity of water taken therefrom by the Lane City Plant and the Borden Plant there would have been no additional flow through the raft, and therefore appellant's supply of water would not have been increased if appellee had been enjoined from further pumping. All of the lands watered by appellee were contiguous to and adjoining its canal, and appellee was under a statutory duty to furnish the owners or holders of said lands with their proportionate share of the water at its command, and in addition to this a large portion of said lands was riparian. Appellee's predecessor in title, the Moore-Cortes Canal Company, had also acquired riparian rights in the Colorado river, and these rights had passed to appellee by purchase from said company.

[1] We are strongly inclined to the opinion that, under the rule of decision in this state which requires appellate courts to dismiss appeals or cases when the subject-matter of the litigation has ceased to exist, the proper disposition of this appeal would be a dismissal.

[2] The only question for our determination is whether or not the trial judge erred in refusing to grant a temporary injunction. It is apparent from the record that the temporary injunction was sought for the purpose of protecting the 1912 growing rice crops of appellant's water tenants, and this court will take judicial knowledge of the fact that such crops had matured and been gathered, or else had perished, long before this appeal was presented for our determination. In this view of the record, a dismissal of the appeal would be proper. But as neither party desires or has suggested such disposition, and the questions presented would become important in the event, which is not unlikely, that a second application for temporary injunction upon the identical grounds here presented might be made to protect a growing crop of appellant's water tenants until a final hearing of the case can be had, we have concluded not to dismiss the appeal, but to decide the material questions presented by the record.

[3] The evidence before set out shows that, if appellee had been enjoined from pumping water from the Colorado river, as appellant prayed, the result of such injunction would have greatly injured, if it had not wholly destroyed, the crops of appellee's water tenants, and appellee and said tenants would have been thereby greatly damaged. On the other hand, it is not clear from the evidence that, if appellee had been enjoined from pumping, the flow of water through the dam would have increased to a sufficient extent to add appreciably to appellant's supply of water; nor is it clear from the evidence that appellant or its water tenants were in fact in need of a greater amount of water than they were receiving at the time of the hearing, or that they would not without the aid of a temporary injunction receive a sufficient amount of water to mature their crops. In these circumstances a temporary injunction was properly refused.

[4] It is a well-settled rule of equity that, if it appears to the judge that more damage is likely to occur by granting a temporary injunction than by refusing it, such injunction should not be granted. On the other hand, if greater injury will occur by refus-

ing than by granting the writ, any doubt as to the right of the applicant should be solved in his favor. 1 Joyce on Injunction, § 20.

[5] We also agree with the trial judge in the holding that the water tenants of appellee, whose names and the number of acres contracted to be watered for each were given in the answer, were necessary parties to the suit. Their interest on the subject-matter of the suit was as direct and vital as that of appellee, and, in addition to their rights under their contract with appellee, many of them held or claimed riparian rights in the water of the river superior to any right of appellant. The fact that they could, under present conditions, only utilize their riparian rights through their contract with appellee, did not affect such rights, and appellant would not be permitted to deprive them of such rights in a suit in which they were not parties, by enjoining appellee from performing its contract with them. This ruling is sustained by our Supreme Court in the case of Watkins Land Co. v. Clements, 98 Tex. 578, 86 S. W. 733, 70 L. R. A. 964, 107 Am. St. Rep. 653.

[6] The general rule that, when a trespass is committed upon the property of another by several persons, the party injured may sue one or any number of the joint trespassers, is not applicable to a case of this kind. The rule applicable here is that where others not parties to the proceedings have a direct interest in the subject-matter of the suit, and a final decree cannot be made without affecting their interest in such manner as may be wholly inconsistent with equity and good conscience, the persons so affected are necessary parties to the proceedings. Biggs v. Lee, 137 S. W. 138; King v. Commissioners' Court, 10 Tex. Civ. App. 114, 30 S. W. 257; Dwyer v. Hackworth, 57 Tex. 251; Board v. Railway Co., 46 Tex. 316; Boesch v. Byrom, 37 Tex. Civ. App. 35, 83 S. W. 18.

[7] The affidavit to the plea of abatement before set out was sufficient. The plea is signed, "Markham Irrigation Company, by J. M. Moore, Its President and Agent." The jurat of the clerk immediately beneath this signature, which is in the usual form, "Sworn to and subscribed before me this the 19th day of August, 1912," can only be taken as a certificate or official statement that the plea was sworn to by Moore, who, as shown by the signature to the petition, had signed it as "president and agent" of the appellant. We think it clear that a prosecution against Moore for false swearing might be predicated upon this affidavit, and this is the test of its sufficiency as an affidavit of Moore.

[8] We do not think, however, that the Lane City Pumping Plant or the Borden Pumping Plant was a necessary party to this suit. Their rights would be in no way affected by any decree that might be rendered in this suit; nor was it necessary, in order to properly adjust the equities between appellant and appellee, that either of the parties named should be brought into the case. If appellee was taking water from the river that belonged to appellant, it would be no defense to appellant's suit to enjoin such taking to show that other parties were also taking water that did not belong to them.

[9] While, as above stated, we do not think the mere fact that the Lane City Pumping Plant or the Borden Pumping Plant, both of which plants were some distance up the river from the plants of the appellant and appellee, was taking water from the river to which appellant had a prior right, would defeat appellant's right to enjoin appellee from taking water which, as between appellee and appellant, belonged to the latter, if the water wrongfully taken from the river by the Lane City Plant was taken with the consent of appellant, and because of such wrongful taking the flow of the water in the river was not sufficient to supply the appellant, appellee could not be held responsible for such shortage in appellant's supply. The evidence is sufficient to sustain the finding that but for the wrongful diversion of water from the river by the Lane City Plant with the consent and approval of appellant there would have been no deficiency in appellant's supply. This being so, appellee was not taking any water to which appellant was entitled, and for this reason the injunction was properly refused.

[10] There is some confusion in the decisions of this state upon the subject of water rights in streams; but the following rules of priority of such rights are settled by the statute: Riparian rights are superior to any right of appropriation obtained under the statute before cited. Article 3117 of the statute, under which appropriation of water is made, provides that the flow or the underflow of water shall not be diverted to the prejudice of the rights of the riparian owner, unless he has consented to such diversion, or his riparian rights have been condemned. By the express provision of article 3119 of this statute, "as between appropriators, the first in time is the first in right."

[11-13] All surveys of land which abut upon a running stream are riparian as to all that portion of the survey which lies within the watershed of the stream, and its surface drainage is into the stream. The rights of the owners of such land to use of the water of the stream for irrigation purposes, as between an upper and lower owner, are equal, and in any controversy between such owners the use of the water for irrigation would be proportioned in accordance with the number of acres of riparian land owned by each of the parties. Watkins Land Co. v. Clements, 98 Tex. 578, 86 S. W. 733, 70 L. R. A. 964, 107 Am. St. Rep. 653. When the controversy is between a riparian owner and an appropriator under the statute, the right of the

former must prevail. At common law the ownership of riparian rights was inseparable from the ownership of the land, and could not be conveyed to or held by one who did not own the land to which it was appurtenant. The statute above cited seems to recognize the right of appropriators of water under the provisions of said statute to acquire either by purchase or condemnation the riparian rights of owners of land upon the stream from which the water is appropriated, and to this extent at least the common-law rule against separating the ownership of riparian rights from the ownership of the land has been abrogated.

Applying these general rules to the facts of this case, it must be held that, while appellant's rights to the use of the water as an appropriator under the statute are superior to such rights of appellee, they cannot be enforced to the injury or detriment of the riparian rights of appellee's water tenants, nor of any riparian rights held by the appellee.

We have not discussed appellant's assignments of error in detail, but what we have said disposes of all the material questions presented by the record.

From the views above expressed it follows that the order of the judge refusing the temporary injunction should be affirmed, and it has been so ordered.

Affirmed.