## COLLINS v. HUMBLE OIL & REFINING CO.   (No. 9467.)

(Court of Civil Appeals of Texas, Ft. Worth. June 26, 1920.)

1. Mines and minerals ⚖⇒79(6)—Delay in payment of rentals not ground for forfeiture.

Delay in payment of rentals under an oil lease, with no intention of tenant to abandon lease, is no ground for forfeiture if the tenant later offers to pay all rentals due; at least where lease does not stipulate for forfeiture for failure to pay when due.

2. Injunction ⚖⇒137(1)—Temporary injunction not issued to transfer possession taken with owner's consent.

Generally when possession of property has been taken with owner's consent, temporary mandatory injunction will not issue to transfer the possession to plaintiff in advance of a final trial of title or right of possession.

3. Injunction ⚖⇒137(2)—Temporary injunction refused on ground of comparative detriment.

Temporary injunction will be denied in a doubtful case where granting of it would cause greater detriment to defendant should he ultimately prevail than would be caused to com-

plainant by its refusal should he ultimately prevail.

Appeal from District Court, Eastland County; E. A. Hill, Judge.

Action by G. N. Collins against the Humble Oil & Refining Company. Temporary injunction refused, and plaintiff appeals. Affirmed.

Burkett, Anderson & Orr, of Eastland, for appellant.

Harrison, Cavin & Key, of Eastland, and J. C. Townes, Jr., of Houston, for appellee.

### Opinion.

DUNKLIN, J. G. N. Collins leased to the Humble Oil & Refining Company, a private corporation, a tract of land abutting on the Leon river, to be used by the company in supplying water for drilling wells and general oil development work. He instituted this suit against the lessee to cancel that lease, and, pending final trial on the merits, he applied for a temporary injunction to restrain the defendant from further use of the property, upon the theory: First, that the lease was never a binding contract; and, second, that defendant has forfeited any rights it ever acquired under and by virtue of that instrument. From an order refusing the temporary injunction prayed for, plaintiff has prosecuted this appeal.

Upon the hearing of the application for the temporary writ, evidence was introduced, and the trial judge filed his findings of fact and conclusions of law, which are as follows:

### "Findings of Fact.

"On the 24th day of November, 1919, G. N. Collins, the plaintiff herein, and the Humble Oil & Refining Company, defendant herein, entered into the following contract:

" 'Agreement.

" 'This agreement, made and entered into by and between the Humble Oil & Refining Company, a private corporation existing under and by virtue of the laws of the state of Texas, hereinafter styled the company, and G. N. Collins, of Eastland, Texas, hereinafter referred to as the grantor, witnesseth:

" 'That whereas the said company is at the present time obtaining water for its use in drilling wells, operating oil and gas wells and general oil field development work, and for supplying all shops, buildings, plants and industries connected therewith, from the Leon river from a location in that portion of the land of the grantor situated on the north side of the said Leon river in the A. M. Bearden pre-emption homestead survey, abstract No. 1361, and company at present operates and maintains at said location on Leon river a water plant or station for the purpose of handling and supplying such water to point where same is being consumed: and, whereas, company is desirous of continuing the aforesaid arrangement so long as it may be necessary for it to make use of said water; and, whereas, the said grantor is likewise desirous of continuing the same, for the consideration now being paid, and hereinafter set forth:

" 'Now, therefore, in consideration of the payment monthly by the company to grantor of the sum of two hundred and fifty (250.00) dollars, the parties hereto agree to the continuation of the privileges which have heretofore been granted to the company as outlined above, to run so long as the company may find it necessary to use such water. The company is hereby granted authority and right to construct a dam along the Leon river on the property of the grantor, for the purpose of impounding said water and it is understood that the said company shall have free access to the land and premises of the grantor for the purposes of constructing and maintaining such dam, water lines, water plants or stations and appurtenances thereto, at all times. It is understood that in case the water becomes low in said stream, the company shall not drain the water from said Leon river down to its plant and dam by deepening the river bed, without getting permission of the said G. N. Collins.

" 'Witness our hands, this the 24th day of November, A. D. 1919.

" 'Humble Oil & Refining Company,
" 'By W. J. Armstrong.
" 'G. N. Collins, Grantor.
" 'Witnesses:
" 'G. B. Kendall,
" 'John Anderson.'

"That pursuant to said contract, the Humble Oil & Refining Company immediately began pumping water from the Leon river, where the same flows through the land of the plaintiff, and the said company has been continuously pumping and using said water since said contract was executed up to the present time; that, acting under the terms of said contract, the defendant erected a dam across the said Leon river at an expense of $3,500, for the purpose of impounding the water of the said Leon river; that defendant had laid a pipe line across the lands of the plaintiff and on northwards towards Olden and Ranger, for the purpose of transporting said water for use of the defendant in its operations for the drilling of the oil wells; that said pipe line has been constructed from the Leon river for a distance of about 11 miles to the territory adjacent to the town of Ranger at an expense of $50,000; that the defendant has erected on the land of plaintiff near the water impounded as aforesaid a pump station at an expense of $4,500; that the defendant is now using the said water for the following purposes, to wit, for the drilling of eight oil wells each using about 150 barrels of water per day; for 5 pumping boilers using about 75 barrels each per day; for supplying water for the families of 27 employés for drinking and domestic purposes; for drilling and domestic purposes of 205 single employés.

"That there has been very little rainfall during the past two months in the oil fields of Eastland county surrounding the town of Ranger; that water is very scarce and very difficult to obtain in said oil field; that if the defendant were deprived of the use of said water it would be difficult for defendant to obtain sufficient supply to maintain its drilling operations and to supply its employés and their families with

water for drinking and domestic purposes; that the defendant has an option on the water hole in said Leon river on the land of a man by the name of Fox, whose land adjoins the land of the plaintiff herein; that there is not more than enough water in the said Fox water hole to supply the needs of defendant more than two weeks; that it would require the defendant about two months to move its pumps station upon the land of the said Fox and erect a dam thereon, which would impound sufficient water for the use of defendant; that if defendant is deprived of the water from the Collins place, which has steady and abundant supply for all of defendant's needs, then defendant would be compelled to close down its operations for 50 or 60 days in order to make arrangements for the use of water from other sources.

"That if the defendant should be deprived the right to pump water from the water impounded on the lands of plaintiff, then the employés of defendant would be in actual want of water for drinking and domestic purposes, and the defendant would be obliged to suspend the operations for the drilling of its wells and the use of its boilers and the other industries in the oil field; that the defendant has contracted for the drilling of eight oil wells, all of which are now in the process of being drilled by the contractors; that defendant has bound and obligated itself to furnish such contractors with the water necessary for the drilling of the said eight wells; that such wells cannot be drilled unless water is furnished amounting to about 150 barrels per day for each well; that under the terms of said drilling contracts the defendant has contracted and agreed to pay such contractors $75 per day per well for each and every day that the drilling operations on such wells would be closed down by reason of the failure of defendant to furnish water for drilling purposes and on that account defendant would be put to the loss of $600 per day shut-down expenses if defendant is deprived of said water, and many of defendant's employés will lose employment and their wages stop; that to deprive defendant of said water would compel defendant to close down many of its activities and operations in connection with the oil industry, and would cause the defendant to suffer a considerable financial loss, the exact amount of which cannot be definitely ascertained; that there now exists in the oil fields in and around Ranger a great scarcity of water which can be used for the operations in connection with the oil industry, and, if deprived of the water from the Leon river on the plaintiff's land, defendant would be obliged to discontinue many of its operations for an indefinite length of time, and would thereby suffer a considerable financial loss.

"That court finds that the defendant is conducting its pump station on the land of plaintiff, and has laid its pipe line on the land of plaintiff in such a way that the plaintiff has suffered no damage by the reason of the said pumping station or by reason of the using of said pipe line; that there is at the present enough water impounded above that dam erected by defendant aforesaid for all of the daily uses to which the same is being put by the defendant, and that defendant's use of the same does not in any way interfere in the use of said water by the plaintiff; that the natural flow of the water in the Leon river is now rather low, owing to the continued dry weather, and the water is barely dripping over the dam erected by defendant on plaintiff's land; that it is doubtful and problematical that the present flow of the river, if a dam should be erected on the Fox land below plaintiff's land, would be sufficient for said dam to impound enough water for use of the defendant; that it would take not less than 60 days to erect a dam and have same ready to impound the waters of the Leon river if same should be running enough to fill up a lake behind the said dam.

"The court further finds that this suit was instituted on the 6th day of April, 1920; that prior to said date the defendant did not pay any rent for the use of the water to plaintiff for the months of February and March, 1920, that the defendant, previous to announcing ready for trial on the hearing for injunction in open court, tendered to the plaintiff the rent for both the said months, together with interest thereon from the first of each month up to the date of such hearing; that such failure of the defendant to pay said rental was an oversight by the defendant, and defendant did not intend to omit such payments.

"The court further finds that the plaintiff testified that on the 6th day of April, 1920, the date this suit was filed, plaintiff elected to declare the above-mentioned water right contract null and void, and that the defendant was notified of such election by plaintiff for the first time when process was served upon the agent of the defendant at Cisco, Tex., by the peace officer on the 6th day of April, 1920.

### "Conclusions of Law."

"The court is of the opinion and concludes that a temporary injunction prayed for by plaintiff ought not be granted for the following reasons:

"(1) Since there is neither allegation nor proof that the defendant is not solvent and could not respond for damages in action at law, the court is of the opinion that the plaintiff, in event on final determination it should be held that defendant is a trespasser, has his adequate remedy at law for damages that may be sustained by reason of such trespass; it not appearing that defendant would not be able to respond in such damages.

"(2) Pending a dispute between a landlord and a tenant as to the validity of a written contract between them creating such relationship, the defendant, having entered the premises with the consent of the landlord under such a contract, is not such a trespasser as could be dispossessed at the instance of the landlord by injunction, even though such a contract may be void.

"(3) That to grant the temporary writ of injunction prayed for in plaintiff's petition would work a great deal more harm to the defendant than will be worked on the plaintiff to refuse to grant such restraining order, and therefore, under the doctrine of the balance of convenience, it becomes the duty of the court to refuse to grant such writ."

The facts so found were amply supported by the evidence introduced.

[1] In an ordinary lease, the principal purpose of the landlord is to realize the rentals contracted to be paid. A delay in the

payment of rentals with no intention on the part of the tenant to abandon the lease, is no ground for forfeiture, if the tenant later offers to pay all rentals due. Creamery Dairy Co. v. Electric Park Co., 138 S. W. 1106. And especially is this true where, as in the present suit, the lease contained no stipulation for forfeiture in the event of failure to pay rentals when due. Johnson v. Gurley, 52 Tex. 226.

[2] It is also a general rule that when possession of property has been taken with the consent of the owner, a temporary mandatory writ of injunction will not issue to transfer the possession to the plaintiff in advance of a final trial of the issue of title or right of possession. Simms v. Reisner, 134 S. W. 278; Montgomery County Development Co. v. Lumber Co., 139 S. W. 1015; Mendelsohn v. Gordon, 156 S. W. 1149.

[3] Another rule stated by Joyce on Injunction, vol. 1, § 25, and quoted with approval in Cartwright v. Warren, 177 S. W. 197, is:

"In a doubtful case, where the granting of the injunction would, on the assumption that the defendant ultimately will prevail, cause greater detriment to him than would, on the contrary assumption, be suffered by the complainant through its refusal, the injunction usually should be denied."

And that rule was followed in Jeff Chaison Town-Site Co. v. McFaddin, Wise & Kyle Land Co., 56 Tex. Civ. App. 611, 121 S. W. 716, and Matagorda Canal Co. v. Markham Irr. Co.,.154 S. W. 1176.

The authorities cited above, which we think sound, are all applicable to this case, and we are of the opinion that the order of the trial court refusing the temporary writ of injunction should be affirmed, irrespective of other assignments, the merits of which we do not determine, presenting the contention that the lease was invalid for lack of mutuality of obligations in that, by its terms, it was binding upon the lessee only "so long as the company may find it necessary to use such water."