## THE STATE V. TEXAS LAND AND CATTLE COMPANY.

Decided February 10, 1904.

**1.—Boundaries—Survey.**
Where the north line of a grant of twelve leagues of land called to run, from an identified northwest corner, eastward some 20,000 varas to an arm of the sea, the distance to such arm being in fact 30,000 varas, and the grant if so bounded containing about twenty-two leagues, if the line was actually run to such arm of the sea, or if it was not run at all, but called for under a mistake as to its distance, the north line should extend to such arm of the sea though occasioning an excess; but if it was actually run and stopped at a lake mistaken for such arm of the sea, it was restricted to such limit, and .the State could recover so much as lay to the eastward of. it. The facts are considered and held to support a finding in favor of those holding under such grant, as against suit by the State.

**2.—Riparian Rights—Accretion.**
Accretion to the land of a riparian owner by alluvion or by dereliction occasioned by recession of the water so gradual as to be imperceptible in its progress, though perceptible by comparison from time to time, belongs to the riparian owner. Denny v. Cotton, 3 Texas Civ. App., 634. ·

Appeal from the District Court of Travis. Tried below before Hon. R. L. Penn.

*C. K. Bell,* Attorney-General, for appellant.

*Jas. B. Wells* and *Chas. W. Ogden,* for appellee.

STREETMAN, ASSOCIATE JUSTICE.—The State of Texas brought this suit originally in the form of an action of trespass to try title for a tract of about 100,000 acres of land known as the Los Laureles ranch, in Nueces County.

The appellee answered by a plea of not guilty, and in reconvention alleged that the land sued for was granted by the Spanish government in May and June, 1807, to Jose Perez Rey, Jose Maria Perez Rey and Jose Manuel Garcia, and that its title emanated from said Spanish government, and had its origin at such time as to be within the protection of the treaty of Guadalupe Hidalgo, on the 4th of July, 1848, and prayed for judgment against the State confirming its title to said land.

In answer to said plea· in reconvention, the State alleged that the grant under .which appellee claimed was for only twelve leagues of land, and that the land sued for contained over twenty-two leagues; and prayed for judgment for the excess; and either that the defendant be required to select the portion of said lands to which it was entitled, and that the State have judgment for the remainder, or that the State have judgment for an undivided interest in said lands and for partition.

The case was tried without a jury and the defendant recovered judgment confirming its title to all of the lands sued for.

.The evidence shows that the Spanish government in May and June, 1807, granted to the parties above named twelve leagues of land; and

the principal question involved in the case is whether the lands granted by said government embrace all of the land sued for, or only a portion thereof. This became an issue of fact.

The decision of the question of fact involved depends upon whether or not the land sued for was embraced, either by actual survey, or, in the absence of actual survey, whether it was intended to be embraced in the field notes shown in said original grant.

The general description which precedes the field notes in the grant, is as follows: "On the east side, this tract of land is bounded by an arm of the sea, called Corpus Christi; on the west side by a laguna called Bahia de los Laureles, connected on the south with said same arm of the sea, for which reason this tract forms a closed pasture."

The evidence shows that the arm of the sea above mentioned was called laguna Madre, and the laguna called Bahia de los Laureles is also known as the Agua Dulce. The northwest corner of the grant, known as San Antonio, and also called Tinaja, is marked by bearing trees and a stone monument, and is located on the ground with reasonable certainty. There is nothing on the ground to mark the location of the northeast corner, called Petitas.

There is some discrepancy in the grant as to the length of the north line; but it is fixed at approximately 20,000 varas. If this line extends entirely across the peninsula, as claimed by the defendant, it is in effect about 30,000 varas, making an excess of some 10,000 varas.

In the northeastern portion of the grant there is a large lake, known as the laguna Larga.

It is the theory of the State, either that an actual survey was run and stopped at the distance of 20,400 varas from the northwest corner; or, if there was no actual survey run, that the surveyor mistook the laguna Larga for the laguna Madre, and called for the latter by mistake, actually intending only to go to the western side of the laguna Larga.

The theory of the defendant is, either that no actual survey was made of the entire north line, or else that the survey did, in fact, reach the laguna Madre, and that the call for the distance is, in either case, a mistake.

As shown by the report of the commissioner in the original grant, the survey was made in the following manner: It began in the morning at the point marked Los Laureles, and extended east 6500 varas. In the afternoon this line was extended 6100 varas in the same direction, and the call at the end of this line is for the laguna Madre. The surveyor then returned on this line to the Mott indicated, and ran south 18,700 varas and reached the Agua Dulce or Bahia de los Laureles. Being unable to go further in this direction, they then ran east 4900 varas and again reached the laguna Madre. Returning upon this line some distance, they then ran south 9800 varas, and reached the lower end of the peninsula. The surveyor then ascertained that a sufficient amount of land was not embraced, and found it necessary to

include the necessary quantity on the north end of the grant. He then returned to the point from which he began, and ran north 6900 varas, and running west from that point 7800 varas, established the northwest corner, known as San Antonio or Tinaja. The report then states that by three surveys in the same direction of 7800, 6500 and 6100 varas, he again reached the laguna Madre and the survey was then closed. And afterwards a division of the entire survey was made between the three grantees.

As we have already stated, the distance called for upon the north line does not reach the laguna Madre by about 10,000 varas; and it is possible that the theory insisted upon by the State, that there was an actual survey made which stopped at this point, may be true. If this theory were established, the State might be able to recover, because in some cases, a call for distance, when shown to be correct, will prevail over a call for natural objects. Sloan v. King, 1 Texas Law Jour., 605, 8 Texas Ct. Rep., 460, and cases cited.

There are many facts in the record, however, which, in our opinion, clearly warranted the lower court in concluding either that an actual survey of this entire line was not made, or that if it was made it actually extended to the shore of the laguna Madre. It will be noted that the last call upon the north line is precisely the same length as the last call upon the first north line run by the surveyor, that is 122 cords or 6100 varas. This is a rather striking coincidence, and might indicate that the surveyor did not in fact run this portion of the line, but simply assumed that the east line of the survey was practically a straight line, and inserted the length from the line previously run, in fact intending it to extend to the laguna Madre. If this were true, the defendants would be entitled to recover. Boone v. Hunter, 62 Texas, 582.

If, however, an actual survey of this line was made, there was abundant evidence to authorize the lower court in finding that the surveyor did not stop at the west side of the laguna Larga, as insisted by the State, but reached the shore of the laguna Madre. The description of the laguna Madre as the eastern boundary of the survey is so full and specific that it renders it improbable that the surveyor mistook the laguna Larga for this body of water. In the report contained in the grant is the following: "On the eastern part it is bounded by an arm of the sea called Corpus Christi. This is in some places more than two leagues in width, and exceedingly abundant in fish. On the western side it is bounded by an arm of the laguna called Laureles. It may be a league wide in some places. It rises and falls as an inlet from the aforesaid arm of the sea, and on the south end the arm of the laguna connects with the arm of the sea, in this manner forming an inclosed pasture, which has an entrance from the north only."

In addition to this description of the laguna Madre, there is contained in the original grant a map made by the surveyor, which shows in the northeastern part a body of water; and there is testimony in the

record that this body of water, as shown in the original map approximately represents the location and shape of the laguna Larga, and indicates very strongly that the surveyor knew the location and shape of this body of water, and did not mistake it for the laguna Madre.

The evidence also shows that the land upon the eastern side of the peninsula has been gradually extended by the deposit of sand, and that it is considerably larger now than it was 100 years ago when the original survey was made; and this would account, in some degree, for the discrepancy in the length of the north line.

It may also be true, as suggested above, that the surveyor having surveyed the first line, in giving the distance of the north line assumed that the east line of the survey ran directly north and south. If this be true, it would account largely for the discrepancy, because the distance from the eastern extremity of the first line to the laguna Madre would probably not be more than half as great as the distance from the northeast corner, as claimed by the State, to said body of water; the course of the laguna Madre being northeast and southwest, instead of north and south. However, whether the discrepancy can be accounted for or not, we are satisfied that the evidence in the record abundantly warranted the lower court in finding that, either by actual survey or according to the intention of the parties, the north line extended entirely across the peninsula, and that the survey embraced all of the land sued for.

It is further contended by the State that it was entitled to recover the land built up on the eastern side of said peninsula since the date of the grant, because the extension had not been so gradual as to make it an accretion which would belong to the owner of the adjoining land. The law applicable to this question has been fully stated by this court in the case of Denny v. Cotton, 3 Texas Civ. App., 634; and, applying the rules there laid down to the facts in the case, we think it clear that the lower court was authorized in concluding that such extension of the land as was shown belonged as an accretion to the adjoining owner.

Finding no error in the judgment it is affirmed.

*Affirmed.*