## NATIVIDAD RODRIGUEZ ET AL. v. JORGE HERNANDEZ.

### Decided March 3, 1904.

**1.—Sovereignty—Boundary—Political Question.**

The sovereignty of territory is a political question, and where the State exercises its authority de facto over a strip of land (one left by avulsion) the court will treat that as conclusive and exercise its judicial authority over such strip.

**2.—Title to Land—Boundary—River Channel.**

One can not recover beyond his title, and defendant in trespass to try title should have been allowed to show that the position of plaintiff's real boundary, the Rio Grande, was determined by the old river channel and that he had no right to recover to the new river bed, where the channel of the river had been changed by avulsion.

**3.—Sovereignty—De Facto and De Jure—Presumption.**

It was improper for the court to hold that there is a conclusive presumption, in support of the rightful exercise of jurisdiction by the State over a strip of territory, that the strip had been added by accretion, the court's right to exercise jurisdiction depending upon the State's de facto and not its de jure control of such territory.

Appeal from the District Court of Presidio. Tried below before Hon. B. C. Thomas.

*W. C. McGown* and *Edwards & Edwards*, for appellants.

*Beall & Kemp* and *P. H. Clarke*, for appellee.

JAMES, CHIEF JUSTICE.—Appellee brought this action of trespass to try title against appellants in reference to two adjoining 160-acre surveys, one patented to John Burgess, the other to Jesus Basquez. The description of the two tracts as given in the petition called for them to extend to the east bank of the Rio Grande. Defendants disclaimed as to all the land not included within certain field notes. As to this they pleaded not guilty and limitations. They alleged that since the location and patents of plaintiff's surveys the river has left its channel and by avulsion formed another channel west of that one, and "that plaintiff is not entitled to recover any land lying west of the line of said channel herein described defining its former channel."

The court ignored consideration of the issue as to the alleged change of the bed of the river, sustaining exceptions to that part of defendants' pleading, and objections to testimony offered in support of same, and submitted the case upon the issue of limitations alone, in reference to which the verdict was against defendants.

The evidence was objected to and excluded, on the following grounds: "(1) Because, on objection of the plaintiff, the court had excluded the pretended Rodriguez grant and the surveys made under it. (2) Because the surveys and patents under which plaintiff claims the land called for the banks of the Rio Grande, and the official map of the General Land Office, introduced by the defendants in evidence, shows that the Burgess and Larkin-Landrum surveys extend to the Rio Grande and

show no vacancy, and that the county of Presidio is bounded by the Rio Grande.

"And the court will take judicial cognizance of the territorial juris-diction of the civil and political authorities of the State and county, and will conclusively presume that the claim of the State of Texas to the land in controversy at the date of the surveys and patents was rightful and not wrongful; and the court will follow the lead of the civil and political authorities and take judicial notice of its established international boundaries; and all evidence offered by plaintiff in contravention of the rightful claim of the government to the main channel of the Rio Grande as an international boundary is inadmissible."

The matter which defendants sought to have determined and which the court refused to allow, was the position on the ground of the west boundary line of plaintiff's surveys. It will not be disputed that under the plea of not guilty a defendant, though a trespasser, can have such matter adjudicated and have plaintiff's recovery confined to the true boundaries of his title, by showing what was sought to be established here, viz., that a boundary line being a river, that river had through avulsion changed its channel. In such case plaintiff would not be entitled to recover of defendant land beyond the thread of the river as it was before such change.

The foundation of the court's ruling seems to have been article 5 of the treaty of Guadalupe Hidalgo, which declares that "the boundary line between the two republics (United States and Mexico) shall commence in the Gulf of Mexico three leagues from land opposite the mouth of the Rio Grande, from thence up the middle of the river following the deepest channel where it has more than one, to a point where it strikes the southern boundary of New Mexico." Article 1 of the treaty of 1884 between the United States and Mexico provides that "the dividing line shall forever be that described in the aforesaid treaty and follow the center of the normal channel of the river named, notwithstanding any alterations in the banks or in the course of said river, provided such alterations be affected by natural causes through the slow and gradual erosion and deposit or alluvium, and not by the abandonment of the existing channel and the opening of a new one."

The view taken by the court appears to have been that defendants could not be permitted to prove that the river, as it existed when plaintiff's surveys were located and granted by the State of Texas, had afterwards in 1886, by avulsion changed its bed so as to run several hundred varas west of where it was when the surveys were granted, leaving between the old and the new channel a tract of land, for the reason that it was judicially known that the State of Texas was exercising its authority and jurisdiction to the Rio Grande, and the proof offered would tend to negative this authority and jurisdiction and prove that the strip was Mexican territory.

No principle is better established than the one which the court rec-

'ognized and which can not be more clearly expressed than was done in Jones v. United States, 137 U. S., 212: "Who is the sovereign de jure or de facto of a territory is not a judicial one but a political question, the determination of which by the legislative and executive departments of any government conclusively binds the judges as well as other officers, citizens and subjects of that government." In the present case the court considered that as the fact of avulsion affects the sovereignty of the strip in question under the treaties, it is not a judicial question but a political one, and as this State exercises its authority to the Rio Grande where it now is, its courts will treat that as conclusive of the question of its boundary, and under no circumstances hear evidence that it had changed its bed by avulsion.

It seems to us that the court was right in so far as the exercise of its judicial authority over the strip was concerned. The fact that the State asserts its authority to the Rio Grande as it is, is conclusive upon the courts which administer its laws as to its authority up to such river; and its courts should treat such territory as a part of its lawful jurisdiction and administer the law there as is done in any other part of the State, regardless of whether or not any part of such territory is rightfully subject to its jurisdiction. But it seems to us, for this very reason, that our courts are required to administer justice and enforce the laws of the State in respect to such territory, as if such question did not exist, just as they are administered and enforced in other portions of the State. If the court is proceeding upon the theory that the State of Texas is exercising its authority to the river as it now runs, and that its own jurisdiction extends accordingly, upon what theory, we ask, can the position be defended that in trying title to land situated within that jurisdiction, a defendant is to be denied the benefit of defenses which the State universally accords its citizens elsewhere?

The case involves the boundary line of plaintiff's surveys as the primary question. The court is properly administering the laws of Texas to the river as it now runs, if the State authorities are doing so, which is a proper matter of judicial cognizance as it concerns the territorial limits of the court's jurisdiction, and when assuming to exercise jurisdiction over it, it should determine the questions raised and the rights of the litigants in said land, according to the laws of the State. In this State plaintiff can not recover beyond the extent of his title, and if his river boundary has undergone a change of channel through avulsion, he can not recover of defendant beyond his line as fixed by the original channel. If the defendant is denied the right to thus show the position of plaintiff's real boundary, then the court is not consistently holding to its jurisdiction over the land. It, however, does assert such jurisdiction over the entire land, but while denying defendant the right to make a well recognized defense, it adjudicates the strip to plaintiff and ousts defendants therefrom. For although the judgment may be so framed as to follow the field notes of plaintiff's

patents calling for the river, the force and effect of the judgment is to adjudicate title to the river as it was at the date of the judgment.

We think it is neither necessary nor proper for the court to hold in this case that there is a conclusive presumption, in support of the rightful exercise of jurisdiction by the State over this territory, that the strip has been added by accretion. The trial court's authority to exercise its jurisdiction at this place does not necessarily depend on the rightful exercise of political authority there by the State government, but it rests as well upon the State's de facto exercise of authority over it. If this exist, then the court's jurisdiction exists, and it is not at all necessary in support of the latter's jurisdiction, to take into consideration the de jure character of the State's act. The presumption of accretion is not necessary to uphold the court's jurisdiction. Once it has jurisdiction, it should exercise it in the ordinary way, and determine the rights of the parties in the land as is done elsewhere in the State. The judgment is reversed and the cause remanded.

*Reversed and remanded.*