SOUTHERN KANSAS RY. CO. OF TEXAS v. VANCE.

(Court of Civil Appeals of Texas. Amarillo. March 8, 1913. On Motion for Rehearing, April 5, 1913.)

1. EMINENT DOMAIN (§ 242*)—JURISDICTION—APPOINTMENT OF COMMISSIONERS.

Under Sayles' Ann. Civ. St. 1897, art. 4447 et seq., providing for appointment by the county court of commissioners to assess the damages in proceedings to condemn land, the district court is without jurisdiction to appoint commissioners on the application of a railroad company seeking to condemn a right of way, appointment is void, and the acts of the commissioners are subject to collateral attack.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 626; Dec. Dig. § 242.*]

2. EMINENT DOMAIN (§ 167*)—STATUTORY PROCEEDINGS—COMPLIANCE—REQUISITES.

One claiming title under condemnation proceedings must show a strict compliance with the statute, and proceedings not in accordance therewith are insufficient, whether excepted to or not.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 451–456; Dec. Dig. § 167.*]

3. EMINENT DOMAIN (§ 228*)—APPOINTMENT OF COMMISSIONERS TO ASSESS DAMAGES—JURISDICTION OF COURT.

The county court of a county, though deprived of civil jurisdiction, is the proper tribunal to appoint commissioners to assess damages in condemnation proceedings under Sayles' Ann. Civ. St. 1897, art. 4447 et seq., and the district court has no power to appoint commissioners.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 582; Dec. Dig. § 228.*]

4. EMINENT DOMAIN (§ 167*)—RIGHT TO EXERCISE—STATUTORY PROVISIONS.

The right to take private property for a public use may only be exercised under the protection of a legislative grant, and under the conditions attached thereto.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 451–456; Dec. Dig. § 167.*]

5. EMINENT DOMAIN (§ 228*)—APPOINTMENT OF COMMISSIONERS—DE FACTO COMMISSIONERS.

Commissioners appointed by the district court to assess damages in condemnation proceedings, while Sayles' Ann. Civ. St. 1897, art. 4447 et seq., requires the county court to appoint commissioners, are not de facto commissioners and are without right to act.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 582; Dec. Dig. § 228.*]

6. CONSTITUTIONAL LAW (§ 281*)—DUE PROCESS OF LAW—CONDEMNATION PROCEEDINGS.

The taking of private property for a public use is a deprivation of property without due process of law, where the court appointing commissioners to assess damages has no authority so to do, and the commissioners have no authority to act.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 880; Dec. Dig. § 281.*]

7. EMINENT DOMAIN (§ 185*)—PROCEEDINGS—JURISDICTION—WAIVER OF WANT OF JURISDICTION.

An owner of land sought to be taken by a railroad company for a right of way does not waive his rights or claim for damages nor admit the regularity of the proceedings by appearing before commissioners to assess damages appointed by a court having no authority to appoint, since the appointment is void.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 499; Dec. Dig. § 185.*]

8. EMINENT DOMAIN (§ 242*)—COLLATERAL ATTACK ON PROCEEDINGS—ARBITRATION.

A railroad company, seeking to condemn land, applied to the district court for the appointment of commissioners to assess damages. The court appointed commissioners. The owner agreed in writing that the commissioners need not serve him with process, but could proceed to condemn his land. It was not shown that he agreed to submit the issues to the commissioners and abide their decision, and after their award he objected to their findings and attempted to appeal. Held, that he did not agree to a statutory or common-law arbitration, and he could collaterally attack the proceedings of the commissioners on the ground that the district court had no authority to appoint them.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 626; Dec. Dig. § 242.*]

9. EMINENT DOMAIN (§ 280*)—APPROPRIATION—ESTOPPEL.

An owner of land appropriated by a railroad company for a railroad right of way is not estopped to demand compensation, though he was present during construction of the road, for, until he has received compensation, the land belongs to him, and he may sue for the land or for the damages for its appropriation.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 776; Dec. Dig. § 280.*]

10. EMINENT DOMAIN (§ 163*)—AWARD OF DAMAGES—DEPOSIT IN COURT—SUFFICIENCY.

Where a railroad company, seeking to condemn land for a right of way, instituted proceedings therefor in the district court, while the statute provides that the proceedings must be in the county court, and the district court appointed commissioners to assess damages, and the company paid the damages to the "clerk" of the county, there was no sufficient payment,

under the statute, requiring payment into court.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 436–441; Dec. Dig. § 163.*]

11. LIMITATION OF ACTIONS (§ 32*)—WRONGFUL APPROPRIATION OF LAND—DAMAGES.

In trespass to try title to land wrongfully appropriated by a railroad company for its right of way, no damages can be recovered for more than two years back, being barred by the two years' statute of limitation.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 143–145; Dec. Dig. § 32.*]

On Motion for Rehearing.

12. EMINENT DOMAIN (§ 253*)—APPEAL—JURISDICTION OF LOWER COURT.

An owner, entitled to appeal from the judgment of commissioners assessing damages in proceedings to condemn land, may not appeal from the judgment of commissioners appointed by a court having no authority to appoint, since an appeal cannot confer on an appellate court jurisdiction which the court below did not possess.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 660–664; Dec. Dig. § 253.*]

13. JUDGMENT (§ 542*)—RES JUDICATA.

A judgment rendered by a tribunal unknown to the law estops no one.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 987; Dec. Dig. § 542.*]

14. COURTS (§ 23*)—JURISDICTION—AGREEMENT OF PARTIES.

Parties may not by agreement confer jurisdiction on courts or create courts.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 75, 75½, 81; Dec. Dig. § 23.*]

15. EMINENT DOMAIN (§ 242*)—JUDGMENT—ESTOPPEL.

Where the district court, without jurisdiction, appointed commissioners to assess damages in proceedings by a railroad company to condemn land for a right of way, the owner was not estopped from attacking the damages, unless he knew of the illegality of the appointment and agreed to accept the decision of the commissioners as final, and unless he, by his acts, induced the company to apply to the district court to make the appointment of commissioners instead of to the county court, authorized by statute to make the appointment.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 626; Dec. Dig., § 242.*]

Appeal from District Court, Randall County; Jno. W. Veale, Special Judge.

Action by J. C. Vance against the Southern Kansas Railway Company of Texas. From a judgment for plaintiff, defendant appeals. Reformed and affirmed.

H. E. Hoover, of Canadian, Otis Trulove, of Plainview, and A. H. Culwell and Terry, Cavin & Mills, all of Galveston, for appellant. R. R. Hazlewood and J. N. Haney, both of Amarillo, for appellee.

HUFF, C. J. This is a suit by appellee, J. C. Vance, against appellant, the Southern Kansas Railway Company of Texas, in trespass to try title to 11²⁸/₁₀₀ acres of land in Carson county. Judgment was rendered for the land and for damages in favor of appellee in the district court of Randall county,

where the case had been taken on change of venue, from which judgment appellant brings the case to this court on appeal.

The petition is in form one in trespass to try title. The answer is by general denial, disclaimer except as to 11²⁸/₁₀₀ acres of land described by metes and bounds, estoppel and two and four year statute of limitation as to the damages claimed, and by section 5 of the answer, which is as follows: "(5) And for other further and special answer herein, if required to further answer herein, defendant says: That prior to the time of entering upon and taking possession of the land described in paragraph 3 of this answer, it caused condemnation proceedings to be instituted under the statute providing therefor for the purpose of condemning the said lands for its right of way purpose; this after it was determined that plaintiff and defendant could not agree upon the damages; that a proper statement was made in writing, and three disinterested freeholders of Carson county were appointed as special commissioners to assess such damages, by the district judge of the Thirty-First district, of which Carson county was and still is a part; that they thereafter duly qualified as such, and thereafter, plaintiff being duly notified, appointed a day and place of hearing; that thereafter, on the day so appointed, the said commissioners met, and, at the time and place so appointed, proceeded to hear the parties; that the said plaintiff appeared at the said time and place and before the said commissioners and put in and urged his claim for damages; that the said special commissioners heard the evidence, and thereupon assessed plaintiff's damages at the sum of $225.60; that, prior to said condemnation proceedings by said special commissioners, said J. C. Vance, in writing, agreed that said commissioners need not serve him with process, and could proceed and condemn right of way through his said land for this defendant; that said waiver is in writing and signed by plaintiff on September 11, 1907, and said hearing was had and damages assessed thereafter by the commissioners so appointed; that plaintiff, being then dissatisfied, attempted to appeal from the award of the said commissioners, but has failed in his appeal, and the same is either still pending in the Court of Civil Appeals at Ft. Worth or has been finally disposed of against plaintiff; that the assessment so made by the said special commissioners was in writing and signed by them on the 17th day of September, 1907; that thereafter, and before the defendant took possession of the said lands, it, as required by law, paid all costs of the condemnation proceedings, and paid the amount of the award for damages to the clerk of Carson county, as the law directs, and said moneys are still in the hands of the said clerk for plaintiff, if he will accept the same; defendant says, and here pleads as a

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

complete bar to the plaintiff's right of recovery herein, that, plaintiff having appeared before the said commissioners and urged his claim for damages for the right of way covering the lands mentioned in said paragraph 3 of this answer, the only question was as to the amount of his damages, and, the commissioners having fixed the amount, his only remedy was by proper appeal therefrom; that by so doing he thereby abandoned all other remedies he might otherwise have had or resorted to; that the said assessment of the said commissioners was and still is res adjudicata of the right to the land and the amount of the damages, which defendant has paid, and the same, not having been revised on appeal, is a complete bar to plaintiff's right to recover the land and as to all damages claimed in his said petition; that said proceedings called into exercise the judicial powers of the tribunal provided by law, and its judgment is valid and binding upon the said plaintiff and a complete bar to his action herein, and of all of this defendant is ready to verify, puts itself up on the country, and asks to be hence dismissed, with its costs."

The parties made the following agreement: "It is agreed that, according to the pleadings of the defendant in this case by both parties, the title to the land described in the plaintiff's petition is in plaintiff, and that it is not necessary to make any proof of title, but that this agreement as to title is subject to defendant's claim for the right of way over that portion of said lands which is described and set out in the defendant's answer, and the controversy in this case is limited to said land claimed as right of way alone. The defendant admitting that the plaintiff has title to all of the lands described in said petition, except the lands held by it as a right of way and fully described in its original answer. * * * It is further agreed that the question of defendant's right to improvements on the land in question, being the land claimed by it as a right of way in good faith, is not determined in this case, but that, if the plaintiff shall finally recover the land in question, the defendants may thereafter make and assert any claims for such improvements as it could now make in this suit. It is further understood and agreed that the question of damage to that portion of the plaintiff's land not taken for right of way is not adjudicated in this case, and that this agreement is made in order to shorten and simplify the record, and is to be incorporated in the statement of facts on appeal."

On exceptions by appellee, the fifth clause of the answer was stricken out, and no evidence offered thereon. So this case depends for decision upon the action of the court in striking out said clause.

[1] It will be observed that in paragraph 5 of the answer it is alleged that appellee and appellant could not agree upon the damages, and "that a proper statement was made in writing and three disinterested freeholders of Carson County were appointed as special commissioners to assess such damages by the district judge of the Thirty-First district, of which district Carson county was and still is a part; that they thereafter duly qualified as such." In the case of Southern Kansas Railway Co. of Texas v. Vance (Sup.) 133 S. W. 1043, it appears that the county court of Carson county was deprived of civil jurisdiction. The Supreme Court in that case, upon certified question, held that the county court of Carson county was the proper tribunal to hear and determine issues in condemnation proceedings. If that court was not deprived of its jurisdiction for that purpose, it follows it was the court to appoint commissioners and that it was the proper court to which appellant should have applied for such appointment. The appellant in this case does not assert there was, and in so far as we can ascertain, there was no power vested in the district court to appoint commissioners. Sayles' Civil Statutes, art. 4447, gives the right and makes it the duty of a corporation, when it and the owner of the land cannot agree, to apply to the county judge in writing. Article 4448 provides that, after such application is filed, the county judge shall forthwith appoint three disinterested freeholders of the county, as special commissioners, to assess damages and to give preference to those that may be agreed on between said corporation and said owner. Articles 4463–4471 require the commissioners to reduce their decision to writing, stating the amount of damages due the owner, which they shall file, together with all papers connected with the case, with the county judge. If either party is dissatisfied with such decision, he may, within ten days thereafter, file his opposition, setting forth the cause. If no objections are filed, then such report and decision is to be recorded in the minutes of the court. Before the corporation can take possession of the land, it shall pay to the owner damages awarded or deposit the amount in the court where the condemnation proceedings are pending.

The district court had no power or jurisdiction, in condemnation proceedings, either to appoint the commissioners, receive their report, file it, or enter it of record. It could not entertain the appeal of either party, and therefore had no jurisdiction over the person or subject-matter. The Constitution or laws did not vest it with such power, and the judge of such court, assuming so to act in the appointment of commissioners, was exceeding his powers or rather assuming powers he did not have. If he had no such power, then his act was void. If void, it had no legal effect and was no order at all. It gave no right, and none could be obtained under it. It neither binds nor bars any one. All acts performed under it and claims of right flowing out of it are void, and there-

fore subject to attack, collaterally or direct, by any one.

Although the Constitution provided that two terms of court should be held in the several counties annually, it was said in the case of Doss v. Waggoner, 3 Tex. 515, the terms must be prescribed by law; and, if but one session is provided for, there is no power in the judiciary to order another in a manner not provided by the statute. In reviewing the judgments at a term ordered by the judge, the Supreme Court, in that case, said: "There was in fact no court in session, and no judgments could by law have been pronounced, and consequently they are not only absolute nullities in the ordinary signification of the term, when applied to the judgments of courts having no jurisdiction over the subject-matter or the parties, but they are not even acts of the court, and therefore not susceptible of appeal or the subjects of revision in any appellate tribunal." Campbell v. Chandler, 37 Tex. 32; Hunton v. Nichols, 55 Tex. 217; Carothers v. Wilkerson, 2 Willson, Civ. Cas. Ct. App. § 356; Schwartz v. Liberman, 2 Willson, Civ. Cas. Ct. App. § 289; Texas & Mexican Railway Co. v. Jarvis, 80 Tex. 456, 15 S. W. 1090, 1091; Nalle v. City of Austin, 101 Tex. 48, 104 S. W. 1050.

In the case of Lyons-Thomas Hardware Co. v. Perry Stove Mfg. Co., 27 S. W. 109, Judge Brown, speaking for the Supreme Court, said: "If, however, the court had not that power, the order would be void and would afford no protection to Harrison. He was bound to know the law and must act at his peril in the execution of a void order." In that case the court, in vacation, appointed Harrison trustee at the instance of certain preferred creditors and in certain deeds of trust. The Supreme Court, in that case, further said: "In this case the order which adjudged that the deeds of trust were valid and ordered the proceeds to be paid on preferred debts adjudicated in vacation the very matter in controversy. The statutes in this state do not vest the judges of the district courts with such authority, and the order was a nullity."

[2] In proceedings under a statute providing for the condemnation of private property to public use, the party claiming under such condemnation must show a strict compliance with such statute. It has been said that proceedings not in accordance with the mode pointed out by the statute is insufficient, and, whether excepted to or not, the court must of its own motion hold the proceedings under it coram non judice and void. The appellant, as a railroad corporation, was vested with the right of eminent domain by which it had the right to subject private property to its own use, but in granting that right the means of its exercise was plainly pointed out.

[3] It is no answer to say that, because the civil jurisdiction was taken away from the county court of Carson county, it was at that time doubtful whether that court could determine the matter. It would have worked no greater hardship on appellant than appellee has been caused to suffer of such doubt. The doubt did not vest the district court with power to start or finish proceedings under the statute in condemnation. The tribunal created by such order did not thereby become a tribunal to condemn the private property of appellee to the use of appellant. Individuals composing the commission remained individuals, with no more power or right than any other citizen. If a railroad takes land from the owner, it can only do so in the manner fixed by law. Railway Co. v. Hunnicutt, 18 Tex. Civ. App. 310, 44 S. W. 535.

[4] When the state, under the right of eminent domain, authorizes the appropriation of private property, such right can only be exercised under the protection of the legislative grant, and under the conditions and liabilities which the statute attached to the grant. Railway Co. v. Meador, 50 Tex. 77; Cummings v. Kendall County, 7 Tex. Civ. App. 164, 26 S. W. 439; Johnston v. Galveston County, 85 S. W. 511.

[5] It is urged by the appellant that the commissioners so appointed were de facto officers, or rather a de facto tribunal, to condemn the land or assess the damages. Certainly the appellant could not itself select the commissioners for such purpose. The law placed in it the right to have land condemned, but did not confide to it the power to create a tribunal to do so, but pointed out the method or court to which it could go and invoke its aid. "The authority to establish a court must emanate from the supreme power of the state; otherwise the court itself is an absolute nullity, and all its proceedings are utterly void. No person can, in the absence of law, create a court and preside over the same, as judge and judges cannot hold a court which is unconstitutional in its organization." 11 Cyc. 702, and notes; State v. Boone County Court, 50 Mo. 317, 11 Am. Rep. 415.

[6] Certainly appellant could not take from appellee his land by such a court. This would be depriving him of his property without due process of law.

The principles which underlie the question of courts de facto and those which are without any binding force or effect may be found in that line of decisions of the Supreme Court of the United States, wherein the question arose as to courts which were created by the confederate Congress and which by that court were held to be nullities, and that they could exercise no rightful jurisdiction. Hickman v. Jones, 9 Wall. 197, 19 L. Ed. 551. "But on the other hand, if the insurrection authorities had no power to create, they had no power to destroy. By no act or proceedings could they strip a law-

ful pre-existing tribunal of its powers and jurisdiction or terminate its existence. Their laws, being altogether void, had no effect whatever upon the courts which had been duly organized before the rebellion began." White v. Cannon, 6 Wall. 443, 18 L. Ed. 923; Horn v. Lockhart, 17 Wall. 570, 21 L. Ed. 657. We think the question as to whether the commissioners were de facto officers is sufficiently answered by Judge Ramsey in the Oates Case, upon rehearing, 56 Tex. Cr. R. 571, 121 S. W. 376, and authorities therein cited.

[7] It is urged by the appellant that the allegations that appellee appeared before the commissioners was sufficient to show a waiver of his right or claim for damages, and were either an admission that all proceedings were regular up to that point or a waiver of irregularities. This would be true if the matter was a mere irregularity in the proceedings, but, as seen, we think the proceedings up to this time were void in that the district judge and the commissioners were without power in the one instance to appoint, and in the other to condemn, the land and assess the damages. There was no authority on the part of appellee to appoint or have appointed commissioners to assess damages to his land, and he could not, by any act of his, render valid that which was void. Railway Co. v. Benitos, 59 Tex. 327. Norwood v. Gonzales County, 79 Tex. 218, 14 S. W. 1057, was a case in which the county commissioners' court had no jurisdiction in 1878 to establish a road within the corporate limits of a city. Such jurisdiction was not given until the act of the Legislature in 1885. In 1882 the city adopted the road so laid out by the commissioners in 1878. Judge Henry said: "It is needless to say the title of the owner of the property was not affected by the mere ratification or adoption in the year 1882 by the city council of the void acts of the county commissioners' court." In the case of McIntire v. Lucker, 77 Tex. 259, 13 S. W. 1027, it was held that the failure to give notice to the landowner to appear before the jury commissioners rendered the condemnation proceedings void for the want of jurisdiction; and the fact that the landowner appeared before the commissioners' court to protest against the report of the jury was not a waiver of such notice. The cases of Cummings v. Kendall County, 7 Tex. Civ. App. 164, 26 S. W. 439, and Vogt v. Bexar County, 5 Tex. Civ. App. 272, 23 S. W. 1044, illustrate the strictness required in such proceedings. In the cases cited by appellant of Huggins v. Hurt, 23 Tex. Civ. App. 404, 56 S. W. 944, and Allen v. Parker County, 23 Tex. Civ. App. 536, 57 S. W. 703, the power of the commissioners' court to lay out and establish certain roads, as provided in articles 4671 and 4682, is discussed. These cases simply discuss the question of the power in said

courts and declare that they had the power to perform the acts of which complaint was made. Judge Connor said in 57 S. W. supra: "If the power exists, acts of procedure may be waived, and a departure therefrom will not render void, in the strict sense of that term, the order of the commissioners' court in the nature of a judgment establishing a road." If the commissioners in this case had the power, then there could be a waiver of notice or any other question of mere procedure thereunder; but, not having the power, their assumption of the functions of jury commissioners was void ab initio. In the case of Rio Grande & El Paso Ry. Co. v. Ortiz, 75 Tex. 602, 12 S. W. 1129, cited by appellant, Judge Gaines, speaking for the court, said: "There is no statutory proceeding in which the owner may take the initiative in order to have his damages assessed. Should the railroad company disregard the statute and occupy and use the land without taking the proper steps for its condemnation, and should the owner sue to compel an assessment and payment of the damages, we see no reason why such suit should be held a waiver of his right to hold the land, with all the incidents of ownership, until the compensation be actually paid. A judgment in his favor in such a suit should be considered merely an assessment and demand of the compensation until it be paid in fact. We are of opinion, therefore, that the appellee's title to his land was not affected by his suit against the Rio Grande & Pecos Railway Company, and the judgment herein rendered in his favor, except in so far as the company acquired the right to pay the judgment and thereby to perfect its title, to the use of the property. * * * These principles are that, where the Constitution or statute of a state require the payment and not merely the securing of the payment of compensation before taking land for public use, the paramount title remains with the owner until the money is actually paid, unless the payment be waived and an effort to enforce the payment, if not a waiver."

[8] It is suggested by the appellant that there was a common-law arbitration, as shown by its answer. The clause relied on is: "That, prior to said condemnation proceedings by said special commissioners, said J. C. Vance, in writing, agreed that said commissioners need not serve him with process, and could proceed to condemn the right of way through his said land for this defendant; that said waiver is in writing and signed by plaintiff September 11, 1907." It will be noted that appellant alleges that, previous to appointing the commissioners, it failed to agree with Vance. It then, upon its own application, got the district judge to appoint the commissioners. The law provides that the county judge, in appointing commissioners, shall give preference to those agreed to by the parties. It is not alleged that appellee

was ever given an opportunity to agree to any commission. Appellant had, under the semblance of authority, brought into existence a tribunal asserting the right to condemn the land which was preparing to do so, and now it is asserted that, because the appellee waived notice and agreed for it to proceed, he cannot question the award. It is not alleged that the appellant and appellee agreed to submit the issue to these men and abide their decision. The fact that appellee agreed with the commissioners that they could proceed did not make an agreement with appellant. Would appellant have been bound under this statement by the decision of the arbitrators? Suppose it had been a proceeding before the county court for $2,000 in a regular suit, and appellee had waived citation and agreed that the court should proceed to judgment, would it be contended that he was thereby estopped from appealing or calling in question such judgment? It is not alleged that it was agreed that these parties should abide the decision of said commissioners. The fact that he waived notice and appeared before the commissioners did not make it a lawful tribunal. We think the allegation lacks the essential elements of an agreement to arbitrate, and, on the contrary, it appears from the face of the answer itself that it was an attempt to take the land of appellee in an ex parte proceeding by appellant, which then claimed to be acting under the law. The allegation does not allege a common-law agreement to arbitrate or an agreement under the statute. It is evident from the allegations that the proceedings set out therein were in invitum, so far as appellee was concerned, and one to which he did not agree. After the award, he objected to their findings. It cannot be held that he agreed to or assented to or confirmed them in any way. It appears that he did try to appeal, but, owing to the irregular and void acts of appellant, was unable to do so. Appellant having asserted that its proceedings were lawful, the appellee, as a matter of precaution, if for no other reason, appeared before that court to assert his right; but, by doing so we do not think it can be asserted he waived his rights to his own under the law. It devolved upon appellant to show judgment vesting it with title to the land or such an agreement to convey as can be enforced in the courts. It assumed to act by void proceedings and cannot complain that its void acts did not vest it with title. It took the risk without any invitation on the part of appellee thereto and, by virtue of its original wrong, took possession of the land and placed the improvements thereon. There was no invitation on the part of the appellee that could have so induced it to act. It would have proceeded whether appellee appeared before the commissioners or not, so far as the allegations in the answer show.

[9] It is asserted by appellant, because appellee suffered the appellant to enter upon his land and construct its road and operate it, that appellee is now estopped from suing for the land. It is sufficient to state in this connection that the trial court found that appellant entered upon the land and constructed its railroad against appellee's consent. As we understand the law, an owner of land, appropriated by a railroad, is not estopped to demand compensation, though he was present during the construction of the road, and, until he has received pay thereto, the land is his, for which he may sue or for damages for its appropriation. Railway Co. v. Benitos, 59 Tex. 327; Railway Co. v. Pfeuffer & Ireland, 56 Tex. 66; Railway Co. v. Hunnicutt, 18 Tex. Civ. App. 310, 44 S. W. 535; Hamilton County v. Garrett, 62 Tex. 602.

[10] As we understand the law, appellant could not take possession of the land until it paid for it or deposited the sum with the court in which the proceedings were pending. Appellant alleges it paid the sum into the hands of the "clerk of Carson county." This is not an allegation that he paid it into the court. Under the peculiar situation of this case, the allegation is duplicitous and uncertain. The proceedings were started in the district court. Were they pending in that court when the money was paid? The law provides the proceedings should be in the county court. In a great number of counties in this part of the state, clerks of the county are clerks of the county and district courts. Now, for what court was this clerk holding the money? The allegation does not show. If the proceedings were in the district court, a payment in the county court would not be under the order of the district court. If paid in the county court, then there were no proceedings pending in that court, and hence no such payment as a condition precedent to appropriating the land.

[11] We sustain the fifth assignment, but overrule all others. Under the petition and evidence, the damages found by the court were barred by the two years' statute of limitation, and the court erred in rendering judgment therefor. The judgment of the court, decreeing the $11^{28}/_{100}$ acres of land to the appellee, is affirmed, but will be here rendered against him for the damages found by the court, as set out in the fifth assignment of error.

The judgment is reformed, and, as reformed, will be affirmed. It is further ordered that the appellee pay all costs of this appeal.

HENDRICKS, J., not sitting.

### On Motion for Rehearing.

HUFF, C. J. Appellant requests us to file conclusions of fact. This case was disposed of principally on the action of the trial court in sustaining exception to paragraph 5 of appellant's answer. It was not discussed as

one of fact, but we will comply with the request, in so far as we can.

First. We adopt the conclusions of fact made and filed by the trial court and brought up in the transcript. Second. We are requested in the first paragraph of the motion to find whether appellee agreed in writing that said commissioners need not serve him with process and might proceed to condemn the right of way through his land for the defendant. We find no evidence of any such written agreement in the record. We find that appellee states he was "subpœnaed" before the "board of condemnation," and that he then appeared before them and "prosecuted that suit," and waited for the termination of the same. His testimony is all there is in the record on that question. Third. Appellee protested vigorously to appellant going on his land. Appellant's employé warned him he had better investigate "before trying to run the men off." After talking with appellant's attorney in the right of way proceeding, he permitted the work to proceed, "as he did not see that he could do more" at that time. Fourth. The evidence does not show that he knew under what authority the men acting as commissioners purported to be acting. There is no evidence that he agreed to them as commissioners to condemn his land, or that the district judge should appoint them, or that he knew they were so appointed. Fifth. He knew appellant went on his land, graded and completed its road across it, and operated trains over the road so constructed. This was done without his consent, against his wishes, and over his protest.

We do not think we are in conflict with the authorities of this state holding that the owner of land waives his right thereto who appears before a regularly constituted board of commissioners, duly appointed under the statute, as asserted by counsel for appellant. We hold that the parties acting under the appointment of the district judge in this case was not such a board of commissioners. Counsel assumes the very thing at issue; that is, whether the parties so acting were under the law a board of commissioners. This is the fundamental question in the case and an important one upon which rests the substantial rights of the parties to this suit. We think, unless it was a tribunal recognized by law from the decrees of which an appeal will lie, their action might result in an injustice to the owner of the land.

[12] The law gives the owner the right of appeal to the courts to correct the judgment of a regular board of commissioners. Judge Williams held in Nalle v. City of Austin, 101 Tex. 48, 104 S. W. 1050, that the judgment by the county court could not be appealed from in the case where the charter of the city of Austin authorized the commissioners to file their report with that court. A trial was had in the county court and judgment rendered making such report the judgment of the court. That case, at least, had some law for such a judgment. The Supreme Court said it was not a court, although entered by the county court, and an appeal from such judgment would not lie. From Baker v. Chisholm, 3 Tex. 157, it has been the holding of the Texas courts that an appeal cannot confer upon appellate courts jurisdiction which the court a quo did not possess. Wadsworth v. Chick, 55 Tex. 241.

The cases cited by appellant are, as a rule, cases from the judgment of legally created courts, recognized as such by law. An appeal can be perfected therefrom and the rights of the parties fully and finally determined. There is reason and authority for holding, when a judge is selected, in a way not regular, to occupy a regularly constituted court under the Constitution and laws, that he will be regarded as a de facto officer; or when the parties may agree to a judge, if no formal agreement is made, or if they treat the judge so acting as one duly selected, they may by their acts be held to have agreed to him as such. But in this case the appellant alone had the right to condemn the land. It alone could institute proceedings and bring into existence the tribunal. The landowner is summarily compelled to surrender his land, and his only right is to ask that such tribunal be established that he may properly prosecute his claim and in which he can protect his interest. Hays v. Railway Co., 62 Tex. 400. His appearance is not a waiver of his right to call in question the judgment of such illegal tribunal in the only way granted him by law. Appellant alleges appellee was dissatisfied with the action of the commissioners and attempted to appeal, but failed in his appeal; doubtless for the good and sufficient reason he could not appeal from the judgment of a tribunal unknown to the law.

[13] It is alleged that this judgment was res adjudicata. This it could not be, if the tribunal rendering it was unknown to the law; such judgment estops no one. The owner of land has the right to have his land condemned by authorities who have the power to summons and swear witnesses. These parties, so acting in this case, had no such power under article 4458. An indictment for perjury could not be sustained by an oath administered by them. The case between these parties, reported in (Sup.) 133 S. W. 1043, clearly illustrates the principle. If the district court could not render judgment in condemnation proceedings because the statute did not confer upon it jurisdiction, then for the same reason it could not institute proceedings for the condemnation of the land. The fact that the company used the land by running its road over appellee's land did not affect his right. If he was chargeable with full knowledge of the claim made of the condemnation, he knew it was with-

out foundation in law and that he could recover possession. Hays v. Railway Co., supra. In so far as the facts go in this case, it is shown appellee did not acquiesce in the acts of appellant or the parties acting as commissioners. While he may have appeared before them, and if he had agreed in specific terms that they were a legally constituted body, authorized under the law to condemn land, such would not make them so.

[14] Parties by agreement cannot confer jurisdiction on courts or create courts. Tribunals and courts must exist by virtue of the law authorizing them. In order to take his land, appellant had to do so by law, or there must have been such an agreement as will give appellant the right to enforce it in court.

[15] The fact that he may have believed they were acting under the law and tried to proceed thereafter under the law ought not operate as a waiver or as an estoppel. In order to operate as a waiver it should be alleged that he knew of the illegal appointment, and, thus knowing, agreed to accept their decision as final, and agreed to waive their appointment by the county judge, and agreed that the district judge should select them. To estop him from attacking the award, it should be shown that by his acts and conduct he induced appellant to apply to the district judge to select men to settle the dispute, and induced appellant to believe he would accept the award as final. This, as clearly appears from the pleadings, was not the case. It is alleged appellant proceeded to condemn under the law, and upon its own volition applied to the district judge without requesting an agreement to have commissioners so appointed. The burden was clearly upon appellant to show a condemnation under the law or that there was such an agreement with appellee as can be enforced. We are fully persuaded the judgment of the district court was correct and that the case has been correctly disposed of.

The motion is therefore overruled.

HENDRICKS, J., not sitting.