MATAGORDA COUNTY DRAINAGE DIST. NO. 5 et al. v. BORDEN et al.

(Court of Civil Appeals of Texas. Galveston. April 12, 1917. Rehearing Denied May 10, 1917.)

EMINENT DOMAIN &⇒281—REMEDY OF PROPERTY OWNER—DEFENSE TO INJUNCTION.

Since Vernon's Sayles' Ann. Civ. St. 1914, art. 2590, giving drainage districts the right of condemnation of land only in conformity to the statutes for "condemning and acquiring the right of way by railroads," refers to articles 6504, 6530, inclusive, providing method of condemnation rather than to article 6531, allowing a railroad sued in trespass to try title to apply for condemnation of the property in cross-bill, a drainage district defending a suit to enjoin its contemplated invasion of land by flowage, could not, in its answer, seek to condemn the right of way in the land affected, by offering to pay the valuation to be established, without first making the payment or depositing it in court, especially where the district was shown to be insolvent, so that it could not make its tender of payment effective, in view of article 6530, reiterating, in effect, the same provision in Const. art. 1, § 17, prohibiting a corporation from entering upon or taking condemned property without first having paid or deposited in court damages awarded in condemnation proceedings.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 776, 780.]

Appeal from District Court, Matagorda County; Saml. J. Styles, Judge.

Suit by A. P. Borden and others against Matagorda County Drainage District No. 5 and others. From judgment for plaintiffs, defendants appeal. Affirmed.

J. W. Conger and F. H. Jones, both of Bay City, for appellants. Proctor, Vandenberge, Crain & Mitchell, of Victoria, and Krause & Wilson, of Bay City, for appellees.

GRAVES, J. This is the second appeal to this court in this litigation over the same subject-matter and between the same parties. The first appeal, reported in 181 S. W. 780 (Matagorda County Drainage District No. 5 v. Borden, et al.), was from an order of the district judge granting a temporary injunction in this case, said order and judgment having been affirmed in this court in an opinion reported in the cited volume of the Southwestern Reporter. The case was later, at the January, 1916, term of the district court of Matagorda county, tried on its merits upon an amended petition filed by appellees against appellants seeking a perpetuation of the temporary injunction formerly granted them. The court upon this final trial rendered judgment for appellees against appellants perpetuating the temporary injunction, and the present appeal is from that final judgment.

This amended petition, though slightly different in such minor and unimportant respects as omitting the county judge as a party, the allegations against the sale of the drainage district bonds, and the prayer for damages, was, in so far as it sought relief against the damaging of appellees' property known as the Mad Island Pasture, a mere amplification of the original petition, the allegations being, however, much more specific and complete.

The statement of the case as made by this court on the former appeal, as set out on pages 780 and 781 of 181 S. W. was as follows:

"The appellees sue as legal owners of a large body of pasture land, 4,962 acres of which are within Matagorda Drainage District No. 5 and 7,057 acres adjoining said drainage district. The suit is against the drainage district and its trustees or commissioners and a firm of contractors who had entered into a contract with said commissioners to construct certain ditches in said district for the purpose of draining it. The injunction was sought for the purpose of restraining the construction of said ditches, upon the ground that if they were constructed in accordance with the plans and specifications prepared by the engineer of the drainage district, and which defendants were about to carry out, plaintiffs' land within and without said district would be greatly damaged by the overflow of water drained from said district and cast upon plaintiffs' land by the contemplated ditches. The damage that it is claimed will accrue to plaintiffs' land by the construction of the ditches is alleged to be $50,000. It is further alleged that the defendant drainage district has no funds on hand and none which are available out of which to compensate plaintiffs for the damages that it will cause them by the construction of said ditches, and that the district cannot raise the money by taxation to pay such damages, because it has already levied the full amount of taxes which it is authorized to levy by the Constitution and laws of this state, and the taxes so levied are already set apart for the redemption of the bonds issued to provide the necessary funds to pay for the construction of the drainage ditches and the survey and preparation of plans for the drainage system for said district; all of the proceeds of the sale of said bonds being required for said purposes. The petition prays that defendants be enjoined from the construc-

tion of said ditches until plaintiffs have been adequately compensated for the injury and damages that will be caused plaintiffs' property by their construction."

The most substantial and material change in the positions of the parties in the two trials for injunction were that in the one from which this appeal is taken the appellants sought to bring themselves within the rules of law stated in this court's opinion upon the first appeal by making tender, in their supplemental answer to appellees' amended petition for injunction, of payment for the right of way across appellees' lands, and claiming that, as a quasi public corporation and under the express provision of the drainage law (R. S. art. 2590), the drainage district had the right of eminent domain, and the consequent authority to condemn the lands for the purposes sought, and asking the district court in this suit for injunction to order the condemnation and valuation of the lands, and offering to pay the full amount found when that had been done. A special exception directed against this part of said answer, on the ground that that court was wholly without jurisdiction to so condemn said lands and assess damages, was sustained by the court. This action is complained of under the thirteenth assignment, and, since it raises the question of the court's jurisdiction to grant the only material additional right over what was involved in the former hearing and the appeal therefrom—that is, the alleged right to have the land condemned and valued through that court—it will be first discussed.

We think appellants mistook their forum, and must overrule their contention. The section of the drainage law invoked (Vernon's Sayles' Statutes, art. 2590), granting the drainage district the right of eminent domain for the purpose of condemning and acquiring the right of way to lands for its uses, provides for its exercise in a precise and particular manner, and evidently in that manner alone, as follows:

"All such condemnation proceedings shall be instituted under the direction of the drainage commissioners, and in the name of the drainage district, and the assessing of damages shall be in conformity to the statutes of the state of Texas for condemning *and acquiring the right of way by railroads.*"

Now, when the statutes "for condemning and *acquiring* the right of way by railroads" are looked to, only one article is found, to wit, art. 6531, Vernon's Sayles' Statutes, which could possibly confer this jurisdiction upon the district court, and that is a special statute, apparently limited to the particular instance of *railway companies sued in trespass to try title* to recover possession of a railway right of way, and reading as follows:

"When any railroad company is sued for any property occupied by it for railroad purposes, or for damages thereto, the court in which such suit is pending may determine all matters in dispute between the parties, *including the con-*demnation of the property, upon petition or cross-bill asking such remedy by defendant, but the plea for condemnation shall be an admission of the plaintiff's title to such property."

While under this article, when properly invoked in the particular class of cases therein contemplated, a district court, having already acquired jurisdiction, could condemn land and award damages, as an incident to the suit in trespass to try title, for the purpose of completing its jurisdiction and determining all matters there in dispute between the parties (Rabb v. Canal Co., 62 Tex. Civ. App. 24, 130 S. W. 916), it is from its terms evident that it did not confer general jurisdiction for the condemnation of lands upon that court, but seems to have restricted the exercise of such jurisdiction to the particular class of cases where the railroad had been sued for, or for damages to, property *already occupied* by it.

Nor do we think the provision in article 2590 of the drainage law, that "the assessing of damages shall be in conformity to the statutes * * * for condemning and acquiring the right of way by railroads," was meant to refer to this single article. If it had been, the mention of it by its number alone—that is, article 6531—would have been the simplest and most direct way of expressing what was meant. But rather do we think the *statutes* thus referred to were Vernon's Sayles'. Revised Statutes, arts. 6504 to 6530, inclusive, which provide a comprehensive system of procedure by railroad companies for the condemnation and acquirement of lands by applying first to the county judge, and then prosecuting the matter through the county court in the detailed manner in said series of articles prescribed. So. Kan. Ry. Co. v. Vance, 155 S. W. 696, and other cases under article 6506; Ry. Co. v. Poindexter, 70 Tex. 98, 7 S. W. 316.

We have italicized part of the above-quoted recitation from said article 2590 of the drainage law as follows, "for condemning *and acquiring the right of way by railroads,*" as further indication that it was therein meant to refer to this series of statutes from article 6504 through article 6530, and not to the separate article 6531, because that series outlines the full and detailed methods by which in general railroads may proceed affirmatively in the first instance to both condemn *and acquire* land or property for any of their legitimate purposes, while the latter single article merely authorizes condemnation alone through that court; that is, any court in which the railroad has been sued as a defendant for the title, or for damages, to property already taken and then held by it for railroad purposes.

If these conclusions be correct, then, since said article 6530—reiterating, in effect, the same provision in section 17, art. 1, of our State Constitution—provides that, "In no case shall such corporation be entitled to enter upon and take the property condemned, without first having paid whatever amount of

damages and costs may have been awarded or adjudged against it by such commissioners, or deposited money to cover the same in the court wherein such condemnation proceedings are pending," the drainage district did not meet these requirements, and certainly could not actually take the 38½ acres of appellees' lands its contemplated ditches required by merely offering through its pleadings, to pay therefor whatever that district court might thereafter determine was the value thereof, in the face of this explicit requirement in both Constitution and statute that the payment must be first made or deposited in court.

The actual contemplated taking of 38½ acres of their lands under these stated conditions, without compensation having been first paid to them or deposited in court, was one of the causes of action set up by appellees, and one of the grounds upon which the injunction granted them was sought. On this phase of the case there was no issue upon the facts, the evidence being undisputed that the construction of the ditches, unless enjoined, would take that quantity of appellees' land under the conditions stated from the pleadings without prior payment. This condition alone would, we think, require affirmance of the trial court's judgment.

But the threatened appropriation of a part of appellees' lands without compensation first made, or so secured by a deposit in money, as required by article 1, § 17, of the Constitution, was not the only right to injunction established by them; because it was further shown by amply sufficient evidence that appellants were about to damage, without adequate compensation being made, a very large part of the said lands, both within and without said drainage district. The lands were shown to be titled lands belonging to appellees, except possibly about 1/10 part of the whole, covered by the beds of the lakes and sloughs, which lay below mean tide, and were covered with a very valuable salt wire grass capable of wintering about 5,000 cattle per year—this being the only use of which the lands were susceptible—and that the hastened precipitation of the large and increased volume of fresh water, which would be cast upon these lands by the proposed system of ditches, would kill this grass, and thereby practically destroy the sole value of the lands to appellees.

Even if it were held that a tender through the pleadings of payment for such damage was tantamount to "adequate compensation," and hence met the specific requirement of said article 1, § 17, as to the damaging of property not taken, and that the district court in this suit had authority through its processes to have the amount of said compensation properly ascertained—neither of which do we hold—then appellants were still without the pale of these requirements, be-cause the drainage district was shown to be insolvent, without funds or property or resources with which to make effective its said tender of payment, or out of which appellees could obtain compensation for any damage that might result to them.

The evidence was very voluminous, and it would serve no useful purpose to here detail it, but we deem it enough to say that it was amply sufficient to justify these conclusions, and to support the judgment of the trial court, especially since the trial was before the court without a jury, and no conclusions of fact or law were either requested or filed.

In its net results, therefore, the case thus made by appellants upon final trial was not materially different from that so passed upon by this court in affirming the order granting the temporary injunction, and the conclusions and authorities there stated are alike applicable here. Matagorda County Drainage District No. 5 v. Borden et al., 181 S. W. 780, and authorities there cited: Ft. Worth Imp. Dist. v. City of Ft. Worth, 106 Tex. 148, 158 S. W. 164, 48 L. R. A. (N. S.) 994; Sullivan v. Dooley, 31 Tex. Civ. App. 589, 73 S. W. 82; Gembler v. Echterhoff, 57 S. W. 313; Farnham, Waters, pp. 2574–2579, inclusive, also p. 2697; Ry. Co. v. Fuller, 63 Tex. 467; Richards v. Washington Term. Co., 233 U. S. 546, 34 Sup. Ct. 654, 58 L. Ed. 1088, L. R. A. 1915A, 887; Pumpelly v. Green Bay Co., 13 Wall. 166, 20 L. Ed. 557; Bradbury v. Vandalia Levee & Drainage District, 236 Ill. 36, 86 N. E. 163, 19 L. R. A. (N. S.) 991, 15 Ann. Cas. 904; Farnham on Waters, vol. 2, § 557; Broussard v. Cruse, 154 S. W. 347; Kingman Imp. Co. v. Bank, 153 S. W. 394; Kittrell v. Irwin, 149 S. W. 199; Daniel v. De Ortiz, 140 S. W. 486; Guerra v. Rodriguez, 120 S. W. 593; Appel v. Childress, 53 Tex. Civ. App. 607, 116 S. W. 129; Spalding v. Aldridge, 50 Tex. Civ. App. 230, 110 S. W. 566; Rossom v. Miller, 15 Tex. Civ. App. 603, 40 S. W. 861; Mutual Life Ins. v. Ford, 61 Tex. Civ. App. 412, 130 S. W. 769; McCoy v. Mayer, 21 S. W. 1015; Richter v. Mfg. Co. (Sup.) 174 S. W. 285, L. R. A. 1916A, 504; McGhee Ditch Co. v. Hudson, 85 Tex. 590, 22 S. W. 398; Mud Creek Irrig. Co. v. Vivian, 74 Tex. 170, 11 S. W. 1078; Canal Co. v. Markham Irrig. Co., 154 S. W. 1176; Gibson v. Carroll, 180 S. W. 630; Denny v. Cotton, 3 Tex. Civ. App. 634, 22 S. W. 122; City of Victoria v. Schott, 9 Tex. Civ. App. 332, 29 S. W. 681; Plummer v. Marshall, 59 Tex. Civ. App. 650, 126 S. W. 1162; State v. Texas, etc., Co., 34 Tex. Civ. App. 460, 78 S. W. 957; Goar v. Rosenberg, 53 Tex. Civ. App. 218, 115 S. W. 653; Rodriguez v. Hernandez, 35 Tex. Civ. App. 78, 79 S. W. 343.

It follows that the district court did not err in perpetuating the injunction, and its judgment will be in all things affirmed.

Affirmed.